UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
Oct 20   3 14 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| PATRICIA ANN MASSEY,<br>Plaintiff | :<br>:<br>: |
| vs. | :  Civil No. 3:03cv55 (PCD) |
| | :<br>: |
| TOWN OF WINDSOR and KATHLEEN<br>QUIN, in her individual capacity,<br>Defendants | :<br>:<br>: |

**RULING ON MOTION TO DISMISS AND STAY**

Pursuant to Fed. R. Civ. P 12(b)(6), Defendants move to dismiss all or part of Counts Two, Three, Four, and Five of the Complaint. Defendants also move to stay the proceedings. For the reasons stated herein, Defendants' Motion to Dismiss is **granted in part**, and Defendants' Motion for Stay is **granted**.

**I. STANDARD:**

A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir. 2001), quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A motion to dismiss must be decided on the facts as alleged in the complaint. Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001). All facts in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 390 n.1 (2d Cir. 2001).

1

## II. BACKGROUND:

Plaintiff brings the present action alleging age, race, and disability discrimination in violations of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (LEXIS 2003), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq. (LEXIS 2003), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (LEXIS 2003) (Count One); 42 U.S.C. § 1983 and Title VII (Count Two); Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-58(a), 46a-60(a)(1), 46a-60(a)(4), 46a-60(a)(5), and 46a-60(a)(8) (LEXIS 2003) (Count Three); intentional infliction of emotional distress (Count Four); and negligent infliction of emotional distress (Count Five).

Plaintiff is a fifty-one year old African American woman. She is a citizen of the United States, residing in Windsor, Connecticut and was employed as a Deputy Town Clerk by the Town of Windsor ("Town"), a municipal corporation in the state of Connecticut. Defendant Kathleen Quin was the Town Clerk for the Town of Windsor and Plaintiff's supervisor. Plaintiff began her employment with the Town in September of 1998. During her employment, Plaintiff was allegedly subjected to discrimination on the basis of her race, age, and disability.

Plaintiff's job performance was exceptionally good. In order to receive Town Clerk certification, Plaintiff was required to complete five training modules and pass an examination. She attended Town Clerk's school and completed the training modules in December 1998, May 1999, May 2000, and December 2000. In June 2001, Plaintiff was one of only fourteen people to pass the Connecticut Municipal Town Clerk's examination.

As a condition of her employment, Plaintiff was subject to a probationary period which, assuming Plaintiff's satisfactory performance, would end after six months. Despite her

exemplary performance, Quin recommended that she be subject to an additional six month probation period. Plaintiff's probationary period ended on or about September 21, 1999, over a year after she began working for the Town. The probationary period was only ended because the Town Manager informed Quin that Plaintiff's probationary period should not have exceeded one year. Quin responded by bombarding the Town Manager with documentation of every error Plaintiff is alleged to have made. Similarly situated employees were subjected to, at most, a one year probationary period and Quin did not document their performance in a similar manner.

Over the course of her employment, additional job responsibilities were added to Plaintiff's workload without proper training, compensation or accommodation. These responsibilities included processing fish and game licensing, processing State conveyance tax forms, and vital statistics. Other similarly situated employees, given such additional responsibilities, were either compensated, trained, or provided the necessary accommodations to perform them.

Plaintiff was subjected to different terms and conditions than similarly situated younger, white, non-disabled employees and was in general treated differently than other employees. Quin communicated with her by leaving notes on her desk when Plaintiff went to the lavatory or took a lunch break.

In September 1999, Quin failed to inform Plaintiff of Moderator Training, which would have allowed her to participate in the election process.[1]

In October 1999, Quin did not provide her with the appropriate High Performance Management Model training information. This information was necessary to help meet the goals

---

[1] Based on the Complaint, it is not clear what the election process is.

3

and objectives of the department.[2]

Quin gave Plaintiff's home telephone number to someone who called the office and asked for her. Other employee's home phone numbers were not given out to callers.

The procedure for accessing money from the copy machine account was changed after Quin implied that Plaintiff had stolen ten dollars from the copy money.

In April 2000 through September 2000, Plaintiff was out sick from work due as a result of the emotional distress she was suffering in her employment. In November 2000, despite the fact that Plaintiff had not expressed her intent to leave her position, Quin caused an advertisement to the position to be posted and interviewed candidates to fill the position. In April 2001, Plaintiff was hospitalized due to a recurrence of her illness. Plaintiff returned to work for a brief period, but was out again from late May 2001 until the end of June. Plaintiff was diagnosed with depression and generalized anxiety disorder. Documentation of this illness was provided to Quin.

In August of 2001, Plaintiff's daughter had a life-threatening allergic reaction which necessitated Plaintiff taking time off from work. When she returned to work, Quin required Plaintiff to present her with a note from a physician documenting her daughter's illness. Similarly situated employees were not treated in such a manner.

In December 2001, Plaintiff was asked to resign by acting Personnel Director and Assistant Town Director, Peter Souza. She declined. On or about December 10, 2001, Plaintiff was terminated. The letter of dismissal stated that she had failed to improve performance as a Deputy Town Clerk over the past three years. The reason given to the Connecticut Department

---

[2] Based on the Complaint, it is not clear how this was the case.

of Labor was willful misconduct. Defendants failed to follow the proper procedures in terminating Plaintiff. Similarly situated employees were afforded the proper termination procedures.

## III. ANALYSIS:

### A. Ruling on Motion to Dismiss ( Doc. 14):

As an initial matter, Defendants move for dismissal on several claims to which Plaintiff does not respond in her Opposition Brief. Those claims are as follows: Count Two only insofar as Plaintiff relies on Title VII to assert a Fourteenth Amendment violation, Count Three inasmuch as Plaintiff fails to state a claim based on Conn. Gen. Stat. § 46a-58(a), Count Three as it pertains to Kathleen Quin under Conn. Gen. Stat. §§ 46a-60(a)(1) and 46-60(a)(8), Count Three as it pertains to either defendant under Conn. Gen. Stat. §46a-60(a)(8), Counts Four and Five as it pertains to Defendants' governmental immunity argument, and Count Five as it pertains to Kathleen Quin. Accordingly, absent opposition and without making any findings as to the merits of Defendants' arguments, its Motion is granted with respect to those claims. Thus, Count Two is **dismissed in part**, Count Three is **dismissed in part**, Count Four is **dismissed** as to the Town, and Count Five is **dismissed** entirely. The remainder of Defendants' Motion will be considered below.

### i. Section 1983 Claim (Count Two):

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges a violation of the Fourteenth Amendment. Complaint, Count Two, ¶ 1. Under § 1983 a municipality cannot be held liable "*solely* because it employs a tortfeasor." Monell v. Department of Social Services, 436 U.S. 658, 691 (U.S. 1978) (emphasis in original). In other words, "a municipality cannot be held liable under § 1983 on a

respondeat superior theory." Id. Liability is only imposed on a government when that government "under color of some official policy, 'causes' an employee to violate another's constitutional rights." Id. at 692. Thus, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). A municipal policy may however be inferred "from the informal acts or omissions of supervisory municipal officials," but the "mere assertion" of such a policy is not sufficient "in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Id. In order to prove such a policy a plaintiff may show facts suggesting that alerted to a possible violation the Town "exhibited deliberate indifference." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). Deliberate indifference may be demonstrated by showing "that the need for more or better supervision to protect against constitutional violations was obvious," with obviousness being "demonstrated through proof of repeated complaints of civil rights violations." Id. Defendants argue that Plaintiff fails allege facts supporting such an inference and fails to show deliberate indifference on the part of the Town. Def. Motion to Dismiss at 5-6 and Def. Reply Br. at 2-3.

At this stage in the proceedings, she has met her burden to defeat a motion to dismiss. Plaintiff suggests that there were numerous instances in which she was treated markedly differently than other younger, white, and non-disabled employees. Complaint, Count Two, ¶¶ 14, 15, 16, 17, 18, 19, 20, 23, 26, 30, 34, and 36. Furthermore, she alleges that she has "complied with all procedural requisites to date having exhausted her administrative remedies and having received a right to sue notice from the proper administrative agencies." Complaint, Count One, ¶ 6. Thus, the Town has clearly been alerted to her allegations prior to the

commencement of this suit and, assuming Plaintiff's version of the facts to be true, has not remedied the problems.³ Thus, considering the early stage of this litigation and making all inferences in favor of Plaintiff, it appears that Plaintiff can prove facts in support of her claim which would entitle her to relief. See Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (Stating motion to dismiss standard). Accordingly, Defendants' motion to dismiss Count Two is denied.

### ii. Adequacy of Intentional Infliction of Emotional Distress Claim (Count Four):⁴

For a party to prevail on an intentional infliction of emotional distress claim, that party must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ., 254 Conn. 205, 210 (Conn. 2000) (internal citations omitted). Liability for intentional infliction of emotion distress requires showing conduct that "exceeds all bounds usually tolerated by society" such that "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. at 210-11.

---

³It is not clear to which causes of action the administrative proceedings pertain. Typically, "plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." Porter v. Nussle, 534 U.S. 516, 523 (2002). Even if the administrative requirements pertain to other causes of action, such as Title VII or the Connecticut law claims, the base allegations of discrimination are the same and, assuming they are true, the effect is to put the Town on notice of the conduct at issue.

⁴As Plaintiff failed to respond to Defendants' governmental immunity argument with respect to the Town of Windsor, the claim against the Town is dismissed and the following section deals only with the remaining claim against Ms. Quin.

Contrary to Plaintiff's argument that it is a jury question, the determination of "whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id. at 210.

Plaintiff alleges facts sufficient to meet the first, third, and fourth prongs of the standard for proving intentional infliction of emotion distress. See Complaint, Count Four, ¶ 36 (Defendant's conduct "was carried out for the purpose of ...causing the plaintiff to suffer emotional distress) and ¶ 8 (Plaintiff is being treated for anxiety and depression caused by the acts of Defendants). Plaintiff, however, fails to allege facts that meet the extreme and outrageous standard.

In the workplace individuals "should expect to experience some level of emotional distress, even significant emotional distress...." Perodeau v. City of Hartford, 259 Conn. 729, 757 (Conn. 2002). This does not mean that individuals should be subject to extreme or outrageous conduct, but "firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Parsons v. United Technologies. Corp., 243 Conn. 66, 89 (Conn. 1997) (internal citations omitted). On its face, the Complaint does not allege facts that transcend the bounds of civilized society, regardless of whether Defendants' actions were objectionable and actionable on other grounds. Plaintiff alleges that Defendants' actions were based on discriminatory animus, but even assuming that this explains the disparate treatment, the Complaint alleges no overtly discriminatory actions and it is impossible to conclude solely on the basis of that motive, with no other overtly outrageous actions, that the conduct is extreme and outrageous. See Dingle v. Fleet Bank, No. CV000443028S LEXIS 677, *3-4 (Conn. Super. March 1, 2001) (Citing to numerous cases and noting that even among cases involving overt

8

racial epithets extreme and outrageous conduct is not always found.). Accordingly, the claim against Defendant Quin is dismissed and thus Count Four of the Complaint is dismissed in its entirety.

### iii. Surviving Claims:

Counts Four and Five are **dismissed**. The claims that remain are Count One, in its entirety, Count Two as it pertains to § 1983, and Count Three as it pertains to Conn. Gen. Stat. §§ 46a-60(a)(4) and 46a-60(a)(5).

### B. Ruling on Motion to Stay (Doc. 19):

Defendants move to stay the present proceedings. Plaintiff has taken no position with regard to Defendants' Motion. The reason for Defendants' Motion is that the Commonwealth Court of Pennsylvania has declared the Legion Insurance Company ("Legion") insolvent and ordered it liquidated. Pennsylvania has ordered that all actions in Pennsylvania involving Legion be stayed. Legion insures Defendants in this action. Defendants argue that both Connecticut and Pennsylvania have adopted the Uniform Insurers Rehabilitation and Liquidation Act, see Conn. Gen. Stat. §§ 38a-903, et seq., and are thus considered reciprocal states under the Act. Def. Mem. Supp. Stay at 2. Defendants therefore argue that a stay is appropriate here because the Act not only provides for the stay of all proceedings in which an insolvent insurer is party or obligated to defend in the state where the insurer has been declared insolvent, but that application for stay in other states may also be made. Id. at 3-4. Absent opposition, the Motion for Stay is granted. Defendants shall bring this action to the attention of the Connecticut Insurance Guaranty Association ("CIGA"), and shall request CIGA to set forth its position on this case on or before December 1, 2003, by which time Defendant shall provide the Court with a status

Guaranty Association ("CIGA"), and shall request CIGA to set forth its position on this case on or before December 1, 2003, by which time Defendant shall provide the Court with a status report. Accordingly, the case shall be stayed until December 1, 2003.

## IV. CONCLUSION:

For the reasons stated herein, Defendants' Motion to Dismiss (Doc. 14) is **granted, in part**, and Defendants' Motion for Stay (Doc. 19) is **granted**. The case shall be stayed until December 1, 2003.

SO ORDERED.

Dated at New Haven, Connecticut, October 20, 2003.

_____
Peter C. Dorsey, U.S. District Judge
United States District Court