RIDER v. TOWN OF FARMINGTON, (Conn. 2001)

TERRIJEAN R. RIDER, Plaintiff, v. TOWN OF FARMINGTON and LEROY BANGHAM, Defendants.

Civil No. 3:99CV02351(AWT).

United States District Court, D. Connecticut

August 29, 2001

**RULING ON MOTION SUMMARY JUDGMENT**

ALVIN W. THOMPSON, United States District Judge

The plaintiff, Terrijean Rider ("Rider"), brings this action against her employer, the Town of Farmington (the "Town"), and her supervisor, Chief of Police Leroy Bangham ("Bangham"), in his individual capacity.[fn1] Rider has three remaining claims in her Second Amended Complaint. The First Count alleges that the Town created a discriminatorily hostile work environment based on Rider's gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The Second Count alleges that Bangham violated the plaintiff's rights under the Equal Protection clause of the 14th Amendment as implemented by 42 U.S.C. § 1983. The Third Count alleges that Bangham violated the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a>-<60>(<a>)(<5>). The defendants have moved for summary judgment. For the reasons set forth below, the defendants' motion for summary judgment is being granted as to all of the remaining counts in the Second Amended Complaint.

**I. FACTUAL BACKGROUND**

The plaintiff has been a police officer employed by the Town of Farmington since 1984. During all times material to this action, Bangham was the Town's Chief of Police, and as such, was Rider's supervisor.

The plaintiff contends that from January 29, 1999 through February 11, 1999, Bangham created a hostile working environment by harassing, verbally abusing, and intimidating her. Rider contends that Bangham threatened to commence an internal affairs investigation of her, that he did in fact commence such an investigation, that he falsely accused her of spreading malicious gossip, and that he coerced her into meeting with him without her union representative being present. Rider alleges that during the same time period, another police officer, Donald Therkildsen ("Therkildsen"), told her that "women don't belong in police work". Rider further contends that Therkildsen verbally intimidated and harassed her while the two of them were responding to a burglary call, and that he verbally intimidated her by yelling at her.

Assessing the record in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the record shows the following facts. On February 1, 1999, Sergeant Tracy Enns, a female officer who had recently been promoted to the rank of Sergeant, was told by a senior officer that she should not "call roll" because some of the officers did not support her promotion. Sergeant Enns agreed. The next

morning, February 2, 1999, Sergeant Enns was again told not to call roll, for the same reason, and again she agreed. Shortly afterwards, Sergeant Enns met with Bangham and tendered her resignation, claiming that she believed she was the target of organized insubordination. Sergeant Enns told Bangham that she had heard second-hand that a meeting had been held by 35 Town police officers "to plot a mutiny against [Sergeant] Enns." Pl.'s Memo. at 3. Sergeant Enns told Bangham that she had heard that Rider was one of the two ringleaders.

After hearing this from Sergeant Enns, Bangham ordered Rider to return to the station and meet with him. When Rider arrived, she noticed that Bangham looked upset, so she asked her union representative to accompany her into the meeting. However, when the two entered Bangham's office, Bangham told the union representative to leave and closed the door, leaving only Rider, Bangham and Bangham's assistant in the room.

Bangham then began to "yell and scream" at Rider, Pl.'e Memo. at 4, and accused her of being the cause of Sergeant Enns' desire to resign. Bangham told Rider that she was going to be suspended or terminated, and that she was the subject of the highest level internal affairs investigation possible.[fn2]

Later that day, Bangham called another female officer, Susan Divenere, into his office. Officer Divenere had been named as the other ringleader of the plot against Sergeant Enns. Bangham did not allow the union representative to join that meeting, either. During that meeting Bangham questioned Officer Divenere about the plot against Enns.

Also on February 2, 1999, Bangham learned that one of his senior officers had told Sergeant Enns not to call roll on the previous two mornings. The officer who had instructed Sergeant Enns not to call roll had been suspended in the past for sexual harassment. Bangham did not question this officer about the incident, but sent him for informal counseling instead.

An internal affairs investigation was commenced and led by Captain James Rio. During the course of this investigation, Captain Rio interviewed Rider, Sergeant Enns, Officer Devinere, Therkildsen, and others. Rider complained to Captain Rio during her interview that she and Therkildsen had had a confrontation while the two of them were on a burglary call, and that Therkildsen had screamed at her and she had felt threatened by him. She also told Captain Rio of Therkildsen's statement that he felt women should not be police officers. Captain Rio investigated both the insubordination charges against Rider and other officers involving the alleged plot against Sergeant Enns, and the claims that Rider had made against Therkildsen, and found that none of the charges or claims could be substantiated. Rider was never disciplined in any manner as a result of the investigation into the alleged plot against Sergeant Enns.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). See Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations

and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet its burden, summary judgment should be granted.

## III. DISCUSSION

### A. First Count: Title VII Claim Against the Town

The defendants claim that the plaintiff has failed to make out a prima facie case of discrimination on the basis of gender under Title VII. The plaintiff advances two theories in support of her Title VII claim.

#### 1. Hostile Work Environment

Rider contends that the "[d]efendants' actions promoted a hostile work environment for the plaintiff . . . . " Sec. Am. Compl., First Count, ¶ 13. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).

The plaintiff contends that she was "intimidated", "falsely accused", "threatened with termination", "verbally abus[ed]", "investigated" without cause, "harassed", and otherwise mistreated by Bangham in the course of her employment, because of her gender. Sec. Am. Compl., First Count, ¶ 6. Rider further contends that Bangham and the Town took no action against Therkildsen, in spite of the fact that Therkildsen stated that women should not be police officers and verbally abused Rider. Assuming *arguendo* that these allegations suffice to make out a prima facie case for a hostile work environment claim, the defendants have offered evidence showing that they took action against Rider for reasons other than her gender, and the plaintiff has failed to produce evidence that the defendants' explanation is pretextual.

The Second Circuit has recently described the plaintiff's burden at the summary judgment stage of a Title VII case as follows:

> Even if the plaintiff succeeds in presenting a prima facie case, the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action. Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the prima facie case drops from the picture. For the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination. The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.

Weinstock, 224 F.3d at 42 (internal citations, quotation marks, and footnote omitted).

Rider contends that Bangham yelled at her publicly when she returned the station from patrol on February 2, 1999. However, she also stated at her deposition that Bangham yelled at a male officer on the same occasion for discussing the matter with Rider, contrary to Bangham's instructions, and did so loudly enough that Rider could hear Bangham even though she was in the ladies room. Rider Depo. at 25. No other evidence has been offered regarding Bangham's behavior in terms of yelling at employees of either gender.

Rider further contends that Bangham threatened to initiate an investigation into the alleged plot against Sergeant Enns, and that he did in fact initiate such an investigation, specifically targeting Rider and Officer Divenere. Rider contends that the fact that only female officers were targeted by the investigation is evidence of discrimination based on gender. However, when Sergeant Enns complained to Bangham, the two officers she named as ringleaders were Rider and Divenere. The plaintiff does not contend that male officers were named by Sergeant Enns but were not investigated by Bangham. Further, the investigation was conducted by a third officer, Captain Rio, and not Bangham himself. Captain Rio's report of his investigation indicates that other officers also reported that Rider was openly critical of the decision to promote Sergeant Enns, and that she showed great animosity towards Sergeant Enns. See Def.'s Memo., Exh. B at 3, 4. The result of this investigation was a finding that none of the charges against Rider or Officer Divenere could be substantiated. No disciplinary action was recommended, and none was taken.[fn3]

Rider also alleges that the Town and Bangham took no action in response to her complaints about Therkildsen. However, Captain Rio did conduct an investigation into Rider's complaint against Therkildsen, during which he interviewed both Rider and Therkildsen, as well as several other officers. Captain Rio's report on what he termed a "supplemental investigation" indicates that Rider was unable to provide details about any harassment by Therkildsen. Def.'s Memo., Exh. B at 11-13. Captain Rio found that Rider's claim that Therkildsen had threatened her could not be substantiated, and recommended no action against Therkildsen. He did, however, advise Therkildsen only to have conversations with Rider in the future that were "professional in nature". Id. There is no contention that Rider made other complaints that were not investigated, nor that the Town routinely failed to investigate complaints filed by women, nor that the investigation itself was conducted in an inappropriate manner.

The parties agree that Rider was yelled at by Bangham, threatened by Bangham with an investigation, and actually investigated. However, the defendants have made a showing that these actions were not taken against Rider because of her gender, but only because she had been identified, by several of her colleagues, as participating in a plot against Sergeant Enns. Thus, the defendants have rebutted any prima facie case presented by the plaintiff, and the burden shifts to the plaintiff to offer evidence that the proffered reasons for the defendants' behavior are mere pretext. The plaintiff has offered no such evidence. Rider has provided no evidence that would suggest that any of the actions she complains of were taken because of her gender. Therefore, no genuine issue of material fact exists as to the presence of a hostile work environment based on gender, and the defendants are entitled to summary judgment on the hostile work environment theory of the Title VII claim set forth in the First Count.

### 2. Disparate Treatment

The plaintiff's second theory of Title VII discrimination is disparate treatment-that is, the plaintiff claims she was treated differently because of her gender. The plaintiff in a Title VII disparate treatment case "must establish a prima facie case of unlawful discrimination by showing that 1) she is a member of a protected class 2) who performed her job satisfactorily (or who was qualified for a new position) 3) who [suffered an adverse employment action] 4) under circumstances giving rise to an inference of discrimination (or retaliation)." Stratton v. Dept. for the Aging for the City of New York, 132 F.3d 869, 879 (2d Cir. 1997); see also Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir. 1997).

The plaintiff contends that the mere initiation of an investigation of her actions constitutes an adverse employment action sufficient to meet the third prong of the Title VII disparate treatment standard. The Second Circuit has noted that "not every unpleasant matter short of discharge or demotion" constitutes an adverse employment action. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (internal quotation marks and citations omitted). In this case, the plaintiff alleges that the defendants' actions "left her feeling frightened and intimidated, but she has not shown, as she must, that she suffered a materially adverse change in the terms and conditions of employment." Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997) (internal quotation marks and citations omitted). The mere filing of charges against an employee does not constitute an "adverse employment action", because "if the charges were ultimately dismissed, [the employee] would not have suffered any adverse effect from them." Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996). In this case, Rider was investigated, but the conclusion was that the charges against her could not be substantiated, and she was not disciplined. Therefore, she did not suffer any adverse employment action.

The plaintiff does not contend that she suffered any adverse employment action beyond the mere investigation. The investigation alone is insufficient, as a matter of law, to constitute an adverse employment action for the purposes of a disparate treatment claim. Therefore, the defendants are entitled to summary judgment on the disparate treatment theory of the Title VII claim set forth in the First Count.[fn4]

### B. Second Count: 42 U.S.C. § 1983 Claim Against Bangham

Bangham contends that he is entitled to summary judgment on the Second Count because he is entitled to qualified immunity. "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999). If the court finds that a clearly established right of the plaintiff has been violated, the court must then determine whether the defendant's actions "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).

Rider alleges that Bangham violated her constitutional right under the Equal Protection Clause to work in an environment free of discrimination based on gender. This right had been clearly established for a decade when the alleged events in this case took place. See, e.g., Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986). However, the court has concluded that the record shows that Bangham's actions did not violate

the plaintiff's right to be free of discrimination on the basis of her gender. The Supreme Court has held that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." Mitchell v. Forsyth, 472 U.S. 511, 527-28 (1985). But in this case, the plaintiff has presented no evidence that Bangham's actions were discriminatory, nor that it was unreasonable for Bangham to believe that yelling at employees during a heated dispute, and investigating employees who had been accused by a superior officer of insubordination, would not violate those employees' constitutional rights. Bangham is therefore entitled to qualified immunity on the Second Count, and summary judgment will enter in his favor as to the § 1983 claim.

### C. Third Count: Conn. Gen. Stat. § 46a-60(a)(5) Claim Against Bangham

Bangham contends that he is entitled to summary judgment on the Third Count, which alleges that he violated CFEPA section 46a-60(a)(5). That statute reads as follows:

> It shall be a discriminatory practice in violation of [CFEPA] . . . [f]or any person, whether an employer or employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so. . . ."

Conn. Gen. Stat. § 46a-60(a)(5) (West 1995).

Bangham argues that he can not be liable under this section as a matter of law because he is named as the person who actually committed the alleged discriminatory acts, and as such, can not be found to have aided and abetted discrimination. The court does not need to reach this issue, because Bangham is entitled to summary judgment even if the court accepts the plaintiff's interpretation of § 46a-60(a)(5).

The plaintiff raises two theories under which Bangham could be found to have aided and abetted a discriminatory practice. First, the plaintiff asserts that "Bangham pressed Captain Rio into investigating frivolous claims against Officer Rider." Pl.'s Memo. at 17. However, the defendant has produced evidence of a non-discriminatory rationale for the investigation, and the plaintiff has not rebutted the defendant's showing that the investigation was ordered because Bangham was told by several officers that Rider was leading a plot against Sergeant Enns. Thus Bangham's initiation of the investigation into Rider's actions could not constitute aiding and abetting discrimination.

Second, Rider contends that Bangham created a working environment which allowed Therkildsen to verbally abuse her. However, Rider does not allege, nor has she offered evidence, that Bangham had any role in, or knowledge of, Therkildsen's behavior towards her. Once Rider did complain, an investigation was conducted into Therkildsen's actions. At least one of Therkildsen's comments to Rider was clearly discriminatory against women. However, there is no evidence that Bangham aided and abetted this behavior. To the contrary, he approved an investigation of Therkildsen as well.

Therefore, no genuine issue of material fact exists as to whether Bangham violated § 46a-60(a)(5), and he is entitled to summary judgment on this count.

### IV. CONCLUSION

The defendants' Motion for Summary Judgment [Doc. # 48] is hereby GRANTED. Judgment shall be entered in favor of the defendants as to all counts, and the Clerk shall close this case.

It is so ordered.

[fn1] The complaint also names as a defendant Donald Therkildsen, in his individual capacity. The parties stipulated to the dismissal of all claims against Therkildsen.

[fn2] The complaint also alleges that on January 29, 1999, Bangham verbally abused Rider and threatened her with the initiation of an internal affairs investigation. However, there does not appear to be any other mention of harassment by Bangham on this date, and the facts as set forth by the plaintiff in her opposition to the motion for summary judgment suggest that this incident occurred on February 2, 1999, not January 29, 1999.

[fn3] Rider also contends that she was deprived of union representation during the meeting with Bangham at which he threatened an investigation. However, she makes no showing that this deprivation was related to her gender. The mere fact that she and Divenere are female, and that each of them was denied union representation in this instance is insufficient to create a genuine issue of material fact as to whether the deprivation of union representation was discriminatory.

[fn4] Even if the investigation alone were enough to constitute an adverse employment action, as noted above, the defendants have rebutted the plaintiff's assertion that their actions were based on her gender, and the plaintiff has produced no evidence suggesting that the defendants' proffered explanation is mere pretext.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved