UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA ANN MASSEY | : | NO.: 3:03CV55 (PCD) |
| V. | : | |
| TOWN OF WINDSOR AND KATHLEEN QUINN IN HER INDIVIDUAL CAPACITY | : : : | September 1, 2004 |

LOCAL RULE 56(b)1 STATEMENT IN ANSWER TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DATED JULY 1, 2004

1. Admit

2. Admit

3. Neither Admits nor denies. Plaintiff not privy to that information.

4. Admit

5. Admit

6. Deny. Plaintiff only received training book after her first sixth month probationary period. (Exhibit 1) Kathy Quinn, Plaintiff's supervisor was not available to assist in training when Plaintiff started her probationary period (Exhibit 2)

7. Admit

8. Neither Admits nor denies. Plaintiff not privy to that information.

9. Neither Admits nor denies. Plaintiff not privy to that information.

10. Neither Admits nor denies. Plaintiff not privy to that information.

11. Admit

12. Neither Admits nor denies. Plaintiff not privy to that information.

1

13. Admit. Kathy Quinn made it clear to Plaintiff that it was not her job to check Plaintiff's work daily. Alice Williams did help with some of the instruction. (See Exhibit 3)

14. Admit

15. Admit

16. Deny. Although Plaintiff received a marginal review, Kathleen Quinn told Plaintiff that more time was needed for her to training, as she had not experienced the full breadth of the position. Plaintiff conceded with this as Kathleen Quinn was working on a book that was published that year and did not have time to train her. (See Exhibit 4)

17. Deny. Plaintiff received a satisfactory evaluation and a letter of recommendation from Kathleen Quinn. (See Exhibit 5)

18. Admit.

19. Neither Admits nor denies. Plaintiff not privy to that information.

20. Neither Admits nor denies. Plaintiff not privy to that information.

21. Admit. Although unofficially we did handle the elections. (See Exhibit 6)

22. Admit.

23. Admit.

24. Neither Admits nor denies. There was a memo that Dede Moore sent around stating that all employees were required to take the training (See Exhibit 7)

25. Deny. Kathleen Quinn did not hear from the Plaintiff that she was waiting for a doctor to call. Further, Plaintiff never gave Kathleen Quinn permission to give anyone her personal information. This was not the protocol for office behavior when someone was out. Kathleen Quinn violated the Plaintiff's rights and discriminated against her when she gave out her personal information to the public. Upon finding out that this person was not Plaintiff's doctor, Kathleen Quinn did not apologize to Plaintiff. Instead she told Plaintiff that maybe she needed to work somewhere else. (See Exhibit 8)

26. Admit. Plaintiff told Kathleen Quinn about her rude and unprofessional behavior. (See Exhibit 9) Also, the fact that Plaintiff; the only black woman in the office was being treated unfairly by Kathleen Quinn was know. (See Exhibit 10)

27. Deny. Plaintiff never told Kathleen Quinn or anyone else that she was angry with her.

2

28. Admit

29. Admit

30. Admit

31. Admit

32. Deny. Alice Williams checked and worked with Plaintiff to make sure changes and corrections that were needed to be made were made at the end of each day so that the system could have the new information ready for the public the following day. (See Exhibit 11)

33. Deny. Corrections for every person entering information were usually done the same day so that the system could have the new information ready for the public the following day. There was no way for all errors to be directed at Plaintiff since there were others who entered and abstracted information from the system. (See Exhibit 12)

34. Deny. There was no way to measure the inaccuracies made by one person as everyone had access to the files and everyone was able to change information to the system. (See Exhibit 13)

35. Deny. Kathleen Quinn did not check the Plaintiff's work, Alice Williams did (See Exhibit 11)

36. Deny. Plaintiff rarely checked Kathleen Quinn's work and Plaintiff was the only one that was on a deadline to complete her work (See Exhibit 14)

37. Admit.

38. Neither Admit nor denies. Plaintiff did not check Kathleen Quinn's records every day so she has no record of that information. Also there were dates and times where Kathleen was not in the office and the overload of work fell to Plaintiff (See Exhibit 15)

39. Admit

40. Admit

41. Admit

42. Deny. Plaintiff allegedly made a "box" of errors. (See Exhibit 13)

43. Admit

3

44. Deny. Plaintiff was performing these tasks, as they were needed from the beginning of her employment. (See Exhibit 16)

45. Deny. Plaintiff was performing these tasks, as they were needed from the beginning of her employment. (See Exhibit 17)

46. Plaintiff had a full workload with deadlines that were imposed on her. Plaintiff was performing many tasks during the day and all of this amounted to a "significant amount of time". (See Exhibit 18)

47. Neither Admits nor denies. Plaintiff was not privy to the chain of command of who was supposed to process the mail. Plaintiff can only testify that SHE had the responsibility to do the Town mail every day. (See Exhibit 19)

48. Admit. Plaintiff was needed EVERY DAY. (See Exhibit 19)

49. Deny. Plaintiff never saw Kathleen Quinn process the mail on any occasion. (See Exhibit 20)

50. Admit. Although no formal training was set up as to these responsibilities, Plaintiff was shown once how perform al of the responsibilities of the Town Clerk's Office. (See Exhibit 21)

51. Neither Admits nor denies. Plaintiff was not privy to that information.

52. Admit. Due to sickness and at the advice of her doctors. Plaintiff missed approximately 120 days of work. (See Exhibit 22)

53. Admit. Initially when Plaintiff's doctor took her out of work, Plaintiff was starting a battery of testing to find out what she was suffering from. At that time, Plaintiff did not know what the testing would disclose. (See Exhibit 22)

54. Neither Admits nor denies. Plaintiff was not privy to that information.

55. Denies. Plaintiff first saw ad for her position while she was out on sick leave. (See Exhibit 23)

56. Admit.

57. Admit.

58. Admit. Kathleen Quinn kept changing the standard in an attempt to discriminate against the Plaintiff and set Plaintiff up for termination. (See Exhibit 24)

4

59. Denies. There was no way to measure the inaccuracies made by one person as everyone had access to the files and everyone was able to change information to the system. This is evidenced by the public records which show errors that were being made even while Plaintiff was out of the office (See Exhibit 25)

60. Admit.

61. Denies. Plaintiff made a statement that with training; a person can become better equipped to be detailed oriented. (See Exhibit 26)

62. Deny. Plaintiff was continually sabotaged as others signed onto her computer. Particularly Kathy Quinn signed onto Plaintiff's computer. (See Exhibit 27)

63. Admit. However, Kathleen Quinn offered no assistance to Plaintiff when Plaintiff asked. (See Exhibit 28)

64. Admit

65. Admit

66. Admit

67. Admit

68. Admit

69. Admit

70. Admit. This is the time that Leon Churchill asked Plaintiff what she considered "fair" with regards to compensation for her termination. (See Exhibit 29)

71. Denies. Plaintiff does not remember the outcome of that meeting.

72. Denies. Plaintiff asked Peter Sousa to speak to her attorney as she had legal representation and to read her letter of concerns. (See Exhibit 30)

73. Denies. Plaintiff set forth her concerns repeatedly and asked Peter Sousa to speak to her attorney as she had legal representation and to read her letter of concerns. (See Exhibit 31)

74. Admit

75. Admit

76. Admit

77. Admit

78. Admit

79. Denies. Plaintiff received a copy of the information the Town of Windsor provided to the State of Connecticut. (See Exhibit 32)

80. Neither admits nor denies. Plaintiff is not privy to that information.

81. Denies. Plaintiff did not find a mouse. Plaintiff found a rat. Also Plaintiff does know that SOMEONE put it in her drawer. (See Exhibit 33)

82. Neither admits nor denies. Plaintiff did not have privy to the actual conversations that led to the rat being placed in her drawer.

83. Denies. Plaintiff knew it was a rat and told Kathleen Quinn this. Plaintiff also knows that Kathleen Quinn did not follow the procedures or protocol for finding rodents in the buildings. Plaintiff overheard her alert someone, however, no one ever showed up to remove the rat. As there was no place to put her personal belongings, after some time Plaintiff removed the rat herself. (See Exhibit 34)

84. Neither admits nor denies. Plaintiff is not privy to that information.

85. Admit. Kathleen Quinn was on many occasions, rude, and disrespectful to Plaintiff whether it be to inform the public or otherwise. (See Exhibit 35)

86. Admit. The office was an open workspace with no privacy. (See Exhibit 36)

87. Admit. Kathleen Quinn on many occasions stood next to, stood over, bumped into and overall disrespected Plaintiff's physical space on order to access or assist customers. Kathleen Quinn never apologized or readjusted the workspace to make sure that Plaintiff's private space was not violated. (See Exhibit 37)

88. Admit. There was no space for Plaintiff to be relocated to. Other workers were using all desks. However, Plaintiff did ask Kathleen to excuse herself when she violated her space or when it was very bad, Plaintiff would just remove herself from the situation. (See Exhibit 38)

89. Admit

90. Neither admits nor denies. Plaintiff was not privy to that information, as Kathleen Quinn did not ask her directly how many days she had. (See Exhibit 39)

6

91. Admit

92. Admit. Plaintiff's daughter was over 21 years of age when this occurred and denied the use of her medical condition or records to be disclosed. Plaintiff had vacation/sick time allotted to her and therefore, was no need to provide said information to Kathleen Quinn (See Exhibit 40)

93. Admit.

94. Deny. Plaintiff continually told Leon Churchill about the discriminatory actions being conducted by Kathleen Quinn. (See Exhibit 41)

95. Admit.

96. Neither admits nor denies. Plaintiff is not privy to this information.

97. Neither admits nor denies. Plaintiff is not privy to this information.

98. Deny. Plaintiff knows that she was treated differently and it was insinuated that she could not keep up with her duties because of her age. (See Exhibit 42)

99. Deny. Plaintiff wrote down the racial slur that Kathleen Quinn said in her presence. (See Exhibit 43)

100. Admit. At that time, testing was exploratory and no diagnosis was made. (See Exhibit 44)

101. Deny. The note from her medical doctor states that she was being treated for depression. (See Exhibit 45)

102. Admit. By the time Plaintiff was diagnosed with this condition, Plaintiff was dealing with DeDe Moore and relayed all information to her. (See Exhibit 46)

103. Admit. The other documentation provided just stated that Plaintiff was being treated on a regular basis and that any questions could be answered with a phone call to her physician. (See Exhibit 47)

104. Deny. The Plaintiff continually asked Kathleen Quinn for help with her projects. If the deadlines that were imposed on her were lifted, Plaintiff may have been able to function in her capacity of Deputy Town Clerk. (See Exhibit 48)

105. Deny. Plaintiff was harassed, discriminated against and ultimately terminated due to her being out for medical leave. (See Exhibit 49)

106. Deny. Although Plaintiff does not ingest medication for her condition, Plaintiff continually sees her physician to monitor and deal with her depression and anxiety. Also, the fact that Plaintiff is no longer in an environment that causes depression and anxiety, Plaintiff no longer has to medicate herself to control her illness. (See Exhibit 50)
107. Admit.

108. Deny. (See Exhibit 51)

PLAINTIFF,
PATRICIA ANN MASSEY

By /s/ Cynthia R. Jennings
CYNTHIA R. JENNINGS

8

## **CERTIFICATION**

This is to certify that a copy of Plaintiff's Opposition to Defendant, Town of Windsor, et. al's Summary Judgment Motion and 56(b) Statement was hand delivered on September 27, 2004, to all Counsel of Record as shown below:

David Monastersky, Esq.,
Alexandria Voccio, Esq.,
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114

Cynthia R. Jennings, Esq.,

United States District Court
Church Street
New Haven
Connecticut