UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA ANN MASSEY | : | NO.: 3:03CV55 (PCD) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF WINDSOR AND | : | |
| KATHLEEN QUIN IN HER | : | |
| INDIVIDUAL CAPACITY | : | OCTOBER 20, 2004 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The defendants, Town of Windsor and Kathleen Quin, hereby submit this reply memorandum in support of their motion for summary judgment dated July 1, 2004.

**I.     PLAINTIFF'S MEMORANDUM IN OPPOSITION**

The plaintiff's memorandum in opposition to the defendants' motion for summary judgment fails to conform to the Local Rules of Civil Procedure. First, the brief is in excess of the 40-page limitation allowed by Rule 7(a)2. The plaintiff did not seek permission of the court to file a brief in excess of 40 pages. Second, the plaintiff's memorandum is not accompanied by a statement of "disputed issues of material fact" as required by Rule 56(a)2.

Pursuant to Rule 56(a)2, the plaintiff did submit a statement wherein she admitted, denied or claimed no knowledge to the defendants' statement of undisputed facts. The majority of the facts denied by the plaintiff, however, was not accompanied by a reference to admissible evidence to support those denials and therefore cannot be relied upon to defeat the defendants' motion. The plaintiff generally cited to exhibits that did not address the assertions set forth in the defendants' Local Rule 56(a)1 Statement at all. See numbers 6, 16, 25, 32, 35, 36, 42, 46, 48, 49, 55, 59, 71-73, 79, 81, 83, 94,

98, 101, 104-106, and 108.  The plaintiff also denied numbers 33, 34 and 62, on the ground that other individuals in the office had access to the computer; the plaintiff, however, failed to provide any evidence that other individuals tampered with or sabotaged her work.

The plaintiff does not set forth any argument in opposition to the defendants' motion for summary judgment as to the plaintiff's claims of age discrimination pursuant to the Age Discrimination in Employment Act, denial of due process under the Fourteenth Amendment, and all claims under the Connecticut Fair Employment Practices Act.  As such, summary judgment should enter in favor of the defendants as to those claims.

## II.   THE PLAINTIFF'S CLAIMS ARE, IN PART, TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

The plaintiff argues that her discrimination claims are not barred by the applicable statute of limitations because of the continuing violation exception.  The plaintiff is mistaken.

First, the continuing violation exception may apply only to hostile work environment claims.  See National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 (2002).  The Supreme Court has affirmed the longstanding principle that:

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.

National Railroad Passenger Corp., 536 U.S. at 113.  The Court explained that a hostile environment claim is "different in kind from discrete acts," and is "comprised of a series of separate acts."  Id. at 115, 117.  As such, the Court held that for hostile work

2

environment claims <u>only</u>, a charge may be timely filed so long as any act that is part of the hostile work environment occurred within the 180- or 300-day time period.  <u>See</u> <u>id</u>. at 118, 122.

Whereas the continuing violation exception applies only to hostile work environment claims, the plaintiff's remaining claims pursuant to Title VII, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act, are time-barred to the extent they are based on acts that occurred beyond the 180- or 300-day time period.

Second, the continuing violation exception does not operate to save even the plaintiff's hostile work environment claim given that much of the alleged wrongful conduct was isolated in time from the September 2001 performance evaluations and subsequent termination.  The exception does not apply where the acts are so "isolated in time … from each other …[or] from the timely allegations [] as to break the asserted continuum of discrimination."  <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 359 (2nd Cir. 2001).  In this case, the plaintiff missed 120 days of work in 2000, returning in December.  <u>See</u> **Exhibit B**, ¶44.  That fact alone is sufficient to bar the plaintiff's claim to the extent it is based on conduct occurring in 1999 or early to mid-2000.

### III.     THE PLAINTIFF'S TITLE VII CLAIM FAILS AS A MATTER OF LAW

The plaintiff argues that she has established a *prima facie* case of discrimination under Title VII because: (i) she is a Black-American female; (ii) she was qualified for the position; (iii) she was intimidated, harassed and terminated from her position; and (iv) the adverse action occurred under circumstances giving rise to an inference of

discrimination.[1]  See Plaintiff's Memorandum, pp.25-26.  The plaintiff, however, does not offer any evidence to refute the defendants' legitimate business reason (poor performance) for terminating her employment.[2]

The defendants have offered numerous forms of admissible evidence to show that the plaintiff was performing poorly in her position.  In contrast, the plaintiff has presented no evidence that her performance was anything but poor in 2000 or 2001. See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶34, 62.  Instead, she relies solely on a performance evaluation in September 1999 in which she was recommended for hire. The fact that the plaintiff was retained after her probationary period, however, is of no import to the issue of whether or not she performed poorly over the following two years.

During the 2000-2001 time-period, the plaintiff and Kathleen Quin were the only two full-time employees in the Town Clerk's Office.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶37.  They were also the only two who handled land records.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶36.  The plaintiff has implied that others in the office tampered with or sabotaged her work, but she has offered no evidence to that effect.  She has offered no evidence to refute that the performance standards for land records, or the deadline for completing said records, applied to both she and Quin.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶35, 36, 59; and **Exhibit B**, ¶¶32, 33, 51. She has offered no evidence that her accuracy in land records ever met the

---

[1] The defendants concede that the plaintiff is a member of a protected class.  The defendants do not concede that the plaintiff was qualified for the position, but they do not contest the issue in this motion.  The defendants concede that the plaintiff's termination was an adverse employment action, but refute the plaintiff's claim that the alleged intimidation or harassment to which she was subjected constituted an adverse employment action.
[2] The plaintiff states incorrectly on page 28 of her brief that the defendants challenged her unemployment compensation.  She concedes otherwise in her Local Rule 56(a)2 Statement.

performance standards that she herself suggested.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶56, 57, 62; and **Exhibit B**, ¶¶49, 56.

Where, as here, the defendants have set forth a legitimate business reason for their actions, the plaintiff bears the burden of showing that said reason is pretext for discrimination.  See Lopez v. Metropolitan Life Ins. Co., 930 F.2d 157 (2nd Cir. 1991).  The plaintiff has failed to present any such evidence.  On the contrary, the same woman who supposedly set the plaintiff up for failure (Kathleen Quin) is the woman who interviewed the plaintiff and recommended her for the position.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶3, 4; and **Exhibit B**, ¶¶6, 7.  The only alleged racially derogatory remark occurred on October 21, 1999, more than two years before her termination, and was unrelated to the termination.  See **Exhibit C**, p. 142.

"[A]s to issues on which the nonmoving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case."  Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2nd Cir. 1998).  In this case, the plaintiff has failed to offer any evidence to refute the defendants' proffered business reason for their actions or to otherwise show pretext.  As such, the defendants are entitled to summary judgment in their favor.

**IV.    THE PLAINTIFF'S ADA CLAIM MUST FAIL**

The plaintiff alleges that she was discriminated against due to her depression and generalized anxiety in violation of the Americans with Disabilities Act.  The plaintiff cannot establish a *prima facie* case of discrimination under the ADA for two reasons.  First, the claim must fail because Kathleen Quin did not know that the plaintiff suffered from these impairments.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶3, 4; and

**Exhibit B**, ¶¶6, 7. To establish a *prima facie* case of discrimination, the plaintiff must show that she sustained an adverse employment action under circumstances giving rise to an inference of discrimination on account of her disability. See Reeves v. Johnson Controls World Svcs., 140 F.3d 144, 149-50 (2nd Cir. 1998). Where, as here, the defendant was not aware of the claimed disability, an inference of discrimination cannot be drawn. The fact that Quin knew the plaintiff was absent from work for an unknown medical reason is not sufficient to defeat summary judgment.

Second, the plaintiff's claim must fail because she has failed to present evidence to show that she was substantially limited in a major life activity. As explained in the defendants' prior memorandum of law, the term "substantially limits" means: (a) unable to perform a major life activity that the average person in the general population can perform; or (b) significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2nd Cir. 1998), cert. denied, 526 U.S. 1018 (1999), *citing*, 29 C.F.R. §1630.2(j)(1). With respect to working,

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. §1630.2(j)(3)(i). The United States Supreme Court has explained that "[t]o be substantially limited in the major life activity of working..., one must be precluded from

more than one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999).

In this case, the plaintiff has presented no evidence that she was substantially limited in performing either a class of jobs or a broad range of jobs. Instead, the plaintiff suggests that she was simply overworked in her particular job of choice. See Plaintiff's Memorandum, p. 32. The ADA, however, does not protect individuals whose limitations are only in their ability to handle the responsibilities of their own particular jobs. See Sutton, supra.

Moreover, the plaintiff fails to even articulate the manner in which she claims to have been substantially limited in her ability to work. Instead, she argues that her depression and generalized anxiety caused her to receive psychological treatment, thereby causing her to miss work, thereby affecting her ability to do her job. See Plaintiff's Memorandum, pp. 31-32; Plaintiff's Exhibit N, pp. 188-89. This argument lacks any merit. Indeed, pursuant to the plaintiff's reasoning, any individual who suffers an injury or impairment would be able to satisfy the "disability" requirement under the ADA by the mere fact that she received treatment during working hours that prevented her from being able to do her job. Fortunately, that is not the case.

Assuming *arguendo* that the plaintiff can set forth a *prima face* of disability discrimination, her claim must nonetheless fail because the Town had a legitimate, non-discriminatory reason for its terminating the plaintiff's employment - continued poor work performance - and there is no evidence of pretext. See section III above.

**V.       THE PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM MUST FAIL**

Under Title VII, a plaintiff may prove disparate treatment on the basis of "race, color, religion, sex, or national origin," if she can establish that she was subjected to a hostile work environment.  See 42 U.S.C. §2000e-2(a)(1). In analyzing a hostile work environment claim, the court must look at the workplace environment as a whole to discover whether it is "abusive."  Harris v. Forklift, 510 U.S. 17, 22 (1993).  A work environment is "abusive" when harassment has reached a certain qualitative level that is "sufficiently severe or pervasive [so as] to alter the conditions of the victim's employment."  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).

In this case, the plaintiff has not presented evidence to show that the so-called harassment was severe or pervasive, or that any harassment was based on her race.  The plaintiff's claim is based on her finding a dead rat in her workstation drawer and her being given increased job responsibilities.  See Plaintiff's Memorandum, pp. 34-35.  The plaintiff does not know who, if anyone, however, placed the rat in the drawer; and it is undisputed that Kathleen Quin had no involvement in the placement of the rat.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶82.  As for the alleged increased job responsibilities, the plaintiff has submitted no evidence that the assignments were based on her race.  On the contrary, the plaintiff has submitted nothing more than conclusory statements to support her case.  Conclusory allegations do not create a genuine factual issue.  See Delaware v. Hudson Ry Co. v. Conrail, 902 F.2d 174, 178 (2nd Cir. 1990); Kulak v. City of New York, 88 F.3d 63, 71 (2nd Cir. 1996).

The plaintiff also attempts to build her case based on the manner in which the Town treated the public.  See Plaintiff's Memorandum, pp. 36-37.  The plaintiff has once

again, however, failed to present any *admissible* evidence on the issue. Affidavits or testimony submitted in opposition to summary judgment must be made on personal knowledge. See Santos v. Murdock, 243 F.3d 681, 683 (2nd Cir. 2001); Fed. R. Civ. P. 56(e). The plaintiff has no first-hand knowledge regarding the alleged conversation between the African-American couple and Kathleen Quin, and as such, her testimony is inadmissible. Moreover, the incident on its face is not indicative of racial animus.

Finally, the plaintiff has simply submitted no evidence that she was treated differently than similarly situated white employees. There is no evidence that others in the office were provided more support than her. There is no evidence that Kathleen Quin did not communicate with others via notes. There is no evidence that others were not required to provide medical documentation to substantiate their use of sick leave. There is no evidence that the defendants failed to follow proper procedures in terminating an employee or that others were afforded different treatment during the termination process. The plaintiff argues that she was required to process Town mail on a daily basis; this argument, however, contradicts the plaintiff's own sworn testimony and interrogatory responses. See Defendants' Exhibit A, pp. 184-85; and Exhibit H, No. 13. Nonetheless, this added responsibility is not sufficient to create an unlawful hostile work environment.

## VI.     THE PLAINTIFF'S EQUAL PROTECTION CLAIM MUST FAIL

The plaintiff claims that she was treated differently than Alice Williams in violation of the Fourteenth Amendment. See Plaintiff's Memorandum, p. 40. The plaintiff's claim must fail, however, because Ms. Williams was not similarly situated to the plaintiff. First, Ms. Williams, unlike the plaintiff, was not an employee of the Town of Windsor; she was

retained on a contractual basis only.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶8, 10, 13, 37.  Second, Ms. Williams, unlike the plaintiff, worked only 20-40 hours as needed.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶10, 37.  Third, Ms. Williams, unlike the plaintiff, was not responsible for processing land records.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶36.  Fourth, unlike with the plaintiff, there is no evidence that Ms. Williams exhibited poor performance with respect to accuracy.[3]

The plaintiff's claim must also fail because the alleged conduct simply does not rise to the level of a constitutional deprivation.  Moreover, Kathleen Quin's conduct was objectively reasonable in light of the circumstances, entitling her to qualified immunity.

The plaintiff has also failed to present any admissible evidence that would warrant the imposition of liability on the Town pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).  As set forth above, the plaintiff has presented no admissible evidence of a discriminatory policy with respect to members of the public or employees.  Similarly, the plaintiff has submitted no evidence of inadequate training to warrant submission of the issue to the jury.  On the contrary, the plaintiff has not even explained her contention of how the training was supposedly inadequate.  In Brown v. Gray, 227 F.3d 1278 (10th Cir. 2000), the case relied upon by the plaintiff, the Court did not hold that the issues surrounding a claim of inadequate training must be submitted to a jury; instead the Court held that there was sufficient evidence in that case to support the jury's finding.  Conversely, in this case, the plaintiff has submitted no evidence regarding training at all.

---

[3] The plaintiff concedes that accuracy in the Town's Clerk Office is essential, and that all land records must be reviewed by someone else and corrected if there is a mistake.  See Local Rule 56(a)1 and 56 (a)2 Statements, ¶¶39, 40.

## VII. <u>CONCLUSION</u>

For the reasons set forth above and in the defendants' prior memorandum of law, this court should grant the defendants' motion for summary judgment in its entirety as to both Kathleen Quin and the Town of Windsor.

> DEFENDANTS,
> TOWN OF WINDSOR
> AND KATHLEEN QUIN IN HER
> INDIVIDUAL CAPACITY
>
>
> By <u>/s/Alexandria L. Voccio</u>
>    Alexandria L. Voccio, ct21792
>    Howd & Ludorf
>    65 Wethersfield Avenue
>    Hartford, CT  06114-1190
>    Phone:  (860) 249-1361
>    Fax: (860) 249-7665
>    E-mail:  avoccio@hl-law.com

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 20th day of October, 2004.

Cynthia R. Jennings, Esquire  
The Barrister Law Group, LLC  
211 State Street  
Bridgeport, CT 06604

                                              /s/Alexandria L. Voccio  
                                              Alexandria L. Voccio