## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

PATRICIA ANN MASSEY           :
                              :
        vs.                   :        No: 3:03cv00055 (PCD)
                              :
TOWN OF WINDSOR and KATHLEEN   :
QUIN                          :

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is defendants' Motion for Summary Judgment on all counts of plaintiff's complaint. Counts 3 (in part), 4 and 5, having been dismissed, there remain as targets of the motion, claims of discrimination in Count 1, alleging race and color (Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e (2005)) ("Title VII"), age (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et. seq. (2005)) ("ADEA") and disability (Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (2005)) ("ADA"); Count 2, equal protection and due process (U.S. Const. amend. XIV) and Count 3 under the Connecticut Fair Employment Practices Act (Conn. Gen. Stat. § 46a-60(a)(1), (4), (5), and (8) (2004) ("CFEPA")

## I.      BACKGROUND:

The facts, to the extent they are undisputed,  are taken from the parties' Local Rule 56(a)(1) statements and the exhibits attached to the parties' memoranda.

Plaintiff originally was employed in the Windsor Building and Land Department, starting in 1996.  She applied for a full time Deputy position in the Town Clerk's office for which she was hired on September 6, 1998, over five other candidates.  Defendant Quin, the Town Clerk, was one of the three interviewers and recommended her hiring.  The job description for a Deputy

1

Town Clerk was provided to her.[1]  At that time the clerk's office, other than Ms. Quin, included four females, three of whom were older than plaintiff and one young, part time student.  One of the three, retired in December, 1998 but resumed working on a part-time basis.  Two of the three were contract employees who worked on an as needed basis, two to three days per week, one through November, 1998 to train plaintiff, the other continuing to the present.

Plaintiff's hire was subject to six months probation which was extended for six months as plaintiff concedes to permit additional training. She was relieved of her probationary status and fully hired, she claims with satisfactory evaluations (*cf*. Ex. F), but a need for improvement was noted. Plaintiff was certified by the State to function as Town Clerk after passing an examination, but complains she was awarded no compensation therefor without any knowledge or reflection that any one else who passed the examination received such.  Plaintiff was assigned by Quin to attend, and did attend high performance management training in June 2002.

In October 1999, after plaintiff complained of not feeling well, a person identifying himself as her doctor called and Quin gave him her telephone book listed number.  Plaintiff denied authorizing the disclosure and complained to Quin who in turn reported the complaint to the Town Manager, Mr. Churchill.  Quin reported excessive errors by plaintiff who denied same. Her performance was the subject of a meeting of the three along with the Dede Moore, the Town Human Resources manager.  Plaintiff contended her file contained no documentation of such. Churchill directed plaintiff to meet with Quin and Moore regularly to discuss her performance,

---

[1]     In contrast to her claim of not receiving it until the end of her six months probation, plaintiff testified (Ex. A at 54) that she received it during hiring as defendants claim.

which took place for 2-4 months.  Changes were made to correct plaintiff's errors at each day's end by Quin, according to defendants, by Williams, according to plaintiff. Plaintiff was given a deadline of 4 PM to complete her work to permit its being checked for required accuracy before the end of the day. From 2000 to the end of 2001, plaintiff and Quin were the only full time employees in the Town Clerk's office.

In January or February of 2000, another meeting of plaintiff and the three town officials was held at which a box of plaintiff's alleged errors was shown.  It was disputed whether initially plaintiff was called upon to do fish and game licensing, tax conveyance forms and vital statistics which were functions of the office but eventually she was assigned such. Plaintiff claims to have processed Town Mail daily-a chore defendants assert she was required to do only when needed. Plaintiff was instructed on all of the Town Clerk's Office responsibilities, though she claims, without clarification, not all formally.

In 2000 plaintiff was absent for 120 days, she claims due to sickness and the advice of her doctor which was not documented except for two weeks with no suggestion of a qualification as disabled. Ex. S. Quin was not informed of any health problems.  She was also absent in May and June with neither a claim by her or an opinion of her doctor of other than a temporary absence from work.  Id.  Hiring of a Deputy Town Clerk was initiated by Quin in October 2000, described as an additional full time employee (Ex. J), who was not hired.  Without substantiation, plaintiff took it as intended to replace her.  Plaintiff was terminated over a year later after substantial interchanges between plaintiff and the town with respect to her job performance.

Performance standards were established as to plaintiff's work, (Ex. B ¶¶ 48, 49) to which

plaintiff expressed approval. Ex. K at 3.  A 90% accuracy was set originally, as of January 1, 2001, rising to 95% after two or three months.  Detail orientation is an essential element of  the work of a Town Clerk's Office.  Plaintiff does not dispute that the standard applied to her and to Quin as to the land records.  In September, 2001, bi-weekly performance evaluations of plaintiff's accuracy with respect to land records was instituted.  Plaintiff's performance deficiencies were the subject of comments by Quin, orally and in writing, particularly in May of 2000 and October of 2001 (Ex. O), to which plaintiff's responded by asking for assistance which was not provided.

A pre-termination hearing was conducted on December 7, 2001 at which she was invited to present "her side of the story."  A further opportunity was provided on December 10, 2001, after which she was given notice of her termination effective on December 14, 2001.  The reason for termination was poor job performance over the three years of her employment. She appealed to the Town Manager who conducted a hearing on December 20, 2001.  Plaintiff there inquired as to fair compensation for her termination, but otherwise stood on concerns stated in her written appeal dated December 13, 2001. Ex. Q.  She neither recalled claiming to Mr. Sousa at the pre-termination hearings any decision was based on her race, age nor any disability nor did she assert to the Town Manager on her appeal any claim that her termination was based on her age, race or any disability.  She asserted only different treatment, without further specification. Ex. C at 12-14.  Plaintiff did not exercise her right to arbitration of her termination, of which she was aware.

Plaintiff applied for unemployment compensation which the Town did not oppose and which she received.  A Department of Labor form listed her termination as for wilful misconduct

which plaintiff assumes, without foundation, was attributable to the Town.

On November 19, 1999 plaintiff found a dead rodent in a drawer under her desk which she characterizes as evidence of harassment with no knowledge of who placed it there nor why. Absent its prompt removal by building maintenance, plaintiff removed it.

Quin periodically accessed the cash register which was adjacent to plaintiff's desk.

Plaintiff was absent from work for a week, originally stated to be for a trip but later advised as needed to attend a daughter who allegedly had a medical emergency.  Though requested to provide documentation for the need to be absent, plaintiff declined to provide same.

## II.    STANDARD OF REVIEW:

Summary Judgment is a means for resolving issues of law when there is no showing of the existence of evidence creative of genuine issues of material fact essential to proof of a claim. Evidence would be material if credited by a jury it would permit a finding in favor of the party against whom a summary judgment motion was directed.  Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In weighing a motion, ambiguities and inferences are resolved in favor of the non-moving party. A non-moving party must show evidence on the basis of which a jury could reasonably find in its favor, Hayut v. State University of New York, 352 F.3d 733, 743 (2d Cir. 2003), to demonstrate existence of a genuine issue of material fact.  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 486-87; 106 S. Ct. 1348; 89 L. Ed. 2d 538 (1986).  The nonmoving party may not rely on conclusory allegations of law nor fact, unsupported statements, nor pleading denials. See Celotex Corp. v. Catrett, 477 U.S. 317, 327,

106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## III.    DISCUSSION:

A. LIMITATION OF ACTIONS

Plaintiff's claim is essentially one of discrimination "during her employment", per her complaint. The record, her complaint, her answers to interrogatories (Ex. H), her correspondence (Exs. K, Q), her Local Rule 56 statement, her deposition (Exs. A, C) and her memorandum in opposition to the Motion for Summary Judgment, are a litany of mistreatment and treatment different from others, from the moment of her hire to her termination.  She asserts a lack of training, an overload of work, a failure to staff the Town Clerk's Office to cope with the workload, the Town Clerk's three week vacation, the town Clerk's involvement in personal work (her knowledge nor the relevance of which is not shown), her continuation on probation beyond two six month periods (by 14 days), the failure to advise her of Moderator training (despite Town Clerk personnel being ineligible to moderate elections), the requirement that from September 1999 to October 2001 she "almost single handedly" performed the duties and responsibilities of the Town Clerk's Office, evaluation of plaintiff's work as unacceptable in 2001 after a positive evaluation in September, 1999, breech of confidentiality in giving out her home telephone number (apparently to one who represented himself to be her doctor responding to her calls), Quin's rudeness, communication to her by written notes, daily flagging to the Town Manager of errors in her work, establishment of bi-weekly performance evaluation meetings (per defendants to check her performance progress in  relation to deficiencies of which she was advised), placing, inappropriate reaction and failure to remove promptly a dead rat from her desk drawer,

imposition of deadlines for work completion, imposition of added duties without consulting her,

unwarranted degradation of her work, unfair performance evaluation, not allowing her to sit

"away from the hub of office activity" to better permit her to get her work done, advertisement

for a Deputy Clerk hire without informing her (done after the fact) and which she assumed was to

replace her (a year before her termination).  On this basis she relies on the theory of continued

violation culminating in her termination in December, 2001.  Her CHRO complaint was filed on

March 7, 2002.  This action was commenced  January 8, 2003.  Defendants argue that the claim

of employment discrimination, under CFEPA, and any Title VII, race and age discrimination

claims are time barred for failure to file required pre-suit claim with the CHRO (180 days) or

with the EEOC (300 days).  They argue that claims under Count one are limited to conduct from

May 7, 2001 (300 days prior to March 7, 2002) and under Count Three to conduct from

September 8, 2001 (180 days prior to March 7, 2002).

    Plaintiffs only response is a claim of a continuing course of conduct which defendants

assert to be a theory applicable only to a hostile environment claim, citing National Railroad

Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106, 122 (2002).

Plaintiff does assert a litany of events that occurred over the span of her employment,

culminating in her termination.  She does not clearly articulate a hostile work environment.

While she characterizes the conduct to which she was subject as harassment, her complaint and

the several documents she has filed do not come close to suggesting an environment which meets

the standard required for a hostile work environment.  That would require assertion of working

conditions so insufferable as to alter substantially the "conditions of [her] employment and create

an abusive working environment." <u>FitzGerald v. Henderson</u>, 251 F3d 345, 356 (2d Cir. 2001).

Merely offensive conduct as opposed to severe and pervasive misconduct is not enough. <u>Id</u>. at

357.  This distinction is significant in examining what plaintiff alleges, and does not allege.

While plaintiff does specify incidents over the course of her employment there is no continuity to

them nor are they described as effecting her conditions of employment or creating an abusive

working environment.  Nowhere does plaintiff personally, nor is it argued on her behalf that the

incidents of which she complains were severe or pervasive.  Thus her claims describe a series of

incidents in which the treatment accorded her constitute different treatment in contrast to that

imposed on others.  A continuing course of conduct is not to be found in unrelated instances of

discrimination. <u>Id.</u> at 362.  As she testified in her depositions, her complaint was that she was

treated differently.  Her CHRO complaint recited as the only effect on her of which she found

fault was her termination. (Ex. E)  She did not then note harassment, retaliation, delegation of

unequal duties, placement on probation, denial of equal services, harassment, warnings, less

training or any other deficiency.  <u>Id</u>.  She also made no reference to any failure to accommodate a

disability, nor discrimination based on gender. <u>Id</u>.  It is only Quin's conduct that is faulted.

Count Two.  It is thus only reasonable to find that plaintiff has alleged not a continuing violation

but a series of unrelated conduct directed to her, which while described as intimidating and

harassing culminated in her being "terminated from her position on or around December 10,

2001.  Pl.'s Memo at 20.

Plaintiff relies on <u>Quinn v. Greentree Credit Corp</u>, 159 F.3d 759 (2d. Cir. 1998), but that

opinion noted the standard for actionable hostile work environment arising when "the workplace

is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993). Quinn alleged over thirty incidents of asserted sexual harassment over an eighteen year employment but not complained of until shortly before she was terminated. The court noted that the continuing violation exception to the limitations on discriminatory actions extended the limitation to acts committed "under an ongoing policy of discrimination", citing Annis v. County of Westchester, 136 F.3d 239, 246 (2d Cir. 1998). Further, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993). Quinn's allegations were held not to have the requisite continuity. She also cites Cornwell v. Robinson, 223 F.3d 694 (2d Cir. 1994) which reiterated the principle that discrete acts do not support a theory of a continued violation absent proof of ongoing discriminatory policies. Plaintiff cites that case as supportive as complainant "had suffered the same kinds of harassment at the hands of some of the same [co-workers], and under the aegis of some of the same supervisory personnel" despite plaintiff's complaints. Id. at 704. That does not describe anything close to what plaintiff complains of here. Her reliance on Velez v. New London, 903 F.Supp. 286 (D.Conn.1995) is misplaced as that court was faced with a motion to dismiss and found an adequate pleading of a continued violation to avoid a statute of limitations defense and the facts were assumed and not assessed.

     The incidents of which plaintiff complains are not related in content, thrust nor pursuant

to a discriminatory policy to permit a finding of a continuing violation.  The motion in this regard is granted and plaintiff will be limited to claims within the time frame asserted by defendant.

    B. DISCRIMINATION

    Plaintiff's claims, of disparate treatment, essentially stem from asserted discrimination; race/color, age and disability.  Each will be examined.

    1. Race/color:  Unquestionably an employer is prohibited from making any employment decision based in whole or part on race/color which are not distinct characteristics but will be treated as identical. Title VII, 42 U.S.C. § 2000e . The process described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) applies, starting with her burden of proving a prima facie case.  She is a member of a protected class, being African, female and 51.  She was terminated, the only adverse employment action claimed.  Her litany of claims of mistreatment over the course of her two plus years of employment cannot be found, individually or cumulatively, to constitute adverse employment action.  The question of her qualification is intermingled with the question of whether the action against her was inferentially discriminatory as opposed to being based on,  as defendants assert, her unacceptable job performance.  The burden of proving a prima facie case is minimal. Texas Department of Community Affairs v. Burdine, 450 U.S. 248,253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).  While plaintiff's record is fraught with irrelevancies (unsupported claims of Quin's engagement in personal matters during working hours) and dubious conclusions (unsupported belief that Quin was somehow responsible for the rodent in her drawer, or at least inappropriately unresponsive to its removal), on a motion for summary judgment plaintiff is entitled to credit for all evidence

10

offered and credibility is not to be decided.  As the record does contain evidence of plaintiff's

qualification at least initially, that would leave only the question of an adverse inference as to her

termination being discriminatory.  Giving her the benefit of the doubt, she will be credited with

enough evidence to sustain her burden of a prima facie case.  Defendant will also be credited

with producing evidence of a non-discriminatory reason for her termination, i.e. as stated to her

the failure to improve her job performance to a satisfactory level.  This is extensively

documented in the file including warnings over the course of her employment and repeated

efforts to get her to correct the deficiencies complained of.  It is found to be credible. Abdu-

Brisson v. Delta Airlines, 239 F.3d 456, 469 (2d Cir. 2001).

Thus plaintiff is left with her burden, Lopez v. Metropolitan Life Ins. Co., 930 F.2d 157

(2d Cir. 1991), since any benefit of an inference arising from a prima facie case disappears with

defendant's production of evidence of a non-discriminatory reason for its action and plaintiff is

left with the burden of proving discrimination was a factor in her termination or that defendants'

asserted reason for the action was pretext.  Unless she offers evidence supportive of a finding of

discrimination and defendants' asserted non-discriminatory reason for its action is pretextual,

defendant would be entitled to summary judgment. Slattery v. Swiss Reinsurance America

Corp., 248 F.3d 87, 94 (2d Cir. 2001).  The only evidence of race/color in the record is the

undisputed fact that plaintiff is African and the other clerk's office employees were white.  There

is nothing in plaintiff's claims of mistreatment that hint at discriminatory motive.  The only

argument made by plaintiff is that all of the incidents of which she complains smacked of an

adversity that was not directed at any of the other office employees, all of whom were white.  A

stray comment by Quin, one year after recommending plaintiff's hiring and two years before her termination and denied by Quin, is not sufficient.  Price Waterhouse v. Hopkins, Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 104 L. Ed. 2d 268,109 S. Ct. 1775 (1989).

To claim disparate treatment, she must show she was treated differently from others not in her protected group.  McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001).  She has offered no evidence that any other employee in the office (all female) had performance problems with the slightest comparison to those flagged to her, nor that any other employee was not held to the same standards of work quality imposed on her.  Her claims are as follows:

a)    Being "subjected to intense and severe scrutiny."

b)    Williams (a part-time, as needed contractor) was not overloaded as was plaintiff.

c)    Being arbitrarily micro-managed for rules, regulations and procedures compliance

d)    Having more job responsibilities than others (all of whom except Quin were part time).

e)    Being subject to bi-weekly performance appraisals.

f)    Disregard of her requests for additional help in doing the work assigned to her.

g)    Continuation of her second probation beyond the provided term (by 14 days, whereupon she was appointed to the full position).

h)    Her application for unemployment benefits was opposed by the town (her assertion  with no foundation or supporting evidence and no showing of loss of benefits).

I)    Being subject to a false report to the unemployment commission of being

terminated for "wilful misconduct" (which appeared on her application form with no evidence of its source and which did not impair her receipt of benefits. The only evidence in the record is plaintiff's belief Ms. Quin was the source due to her claimed harassment by Ms. Quin, with no supporting evidence. Ex. A, at 169-70.

j)      Being subject to an implication that she stole $10 (based on an inquiry of her as the last

person associated with the fund, with no adverse action against her)

k)      An ad was placed for a Deputy Town Clerk (her title) without advising her and which she concluded (without foundation) was for her replacement, which did not come to pass (and thus she was unaffected)

l)      Being inundated with memos dealing with meeting deadlines for work completion and her work errors starting in October, 1999 (all land record entries were reviewed).

m)     Being communicated with by Quin by memos, not orally or by note (Ex. A, p. 140)

n)      Absence of a job description (which she conceded she received-Ex. A, p.53-54; Ex. D)

o)      Absence of adequate training (the training of others in the office was unknown to her and she had a town Manual, was sent to school and received on the job training)

p)   Having her home telephone number supplied to an inquirer (who described himself as her doctor responding to her calls, which occasioned no adverse consequence)

q)   Disrespect to her by Quinn.

r)   Violation of her space by Quin.

s)   Being asked for a note to justify work absence.

Pl.'s Memo. at 26, et seq.

Defendants' questions, concerns and issues as to plaintiff's performance and notice to her is substantially documented. See Ex. A at 95, 104, 128, 134, 135, 146, 147; F; M; N; O.

As noted, a requisite of this claim is discrimination based on race/color. Plaintiff has not presented any direct evidence that her race/color was the slightest factor in the different treatment to which she allegedly was subjected.  The adverse employment action cited is her termination which was determined either by Mr. Sousa or Mr. Churchill.  Ms. Quin is not shown to have had any decisional authority to do so.  Even if Quin's input is factored in as initiating the termination, and her conduct toward plaintiff is deemed a motivating factor in the termination, nothing in the record gives rise, reasonably, to an inference that race/color played any role in Quin's conduct. Even if defendants' substantiation of soundly based dissatisfaction with her job performance is totally disregarded, what plaintiff has presented is a dispute over whether she was overworked, repeatedly erred in the work done (undisputedly required to be accurate) and frequently missed deadlines for work completion.  She denied work below the standards of performance to which she agreed but offered no evidence in support of her implication that others had access to her

14

computer and that her work had been sabotaged.  See Local Rule 56 Statement ¶¶ 56, 57, 62.

Even if all her claims of different treatment are credited, and that most of her claims are

conclusions she draws with little or no evidential substantiation (which would preclude her so

testifying at trial for lack of foundation) are disregarded, there is no basis for finding that a jury

could reasonably infer that Quin was motivated to discriminate against plaintiff on the basis of

her race/color.  Plaintiff has stated her belief that Quin harassed her, was more demanding of her

than of others in the work of the Town Clerk's office, was rude to her and micro-managed her

work while she was the workhorse of the office.  Even if all of the plaintiff's claims, other than

the discrimination to which she concludes she was subjected, are credited, there is nonetheless no

evidence that would permit a jury to infer, reasonably, that Quin was race/color motivated in any

purported improper and different treatment.  There is nothing to suggest that Quin's focus on the

accuracy, prompt completion and correctness of the records for which her office was responsible

was unreasonable or differently required of all of the office personnel.  Even crediting plaintiff's

assertions of strict standards for her work, there was no suggestion that the job performance of

others in the office was unsatisfactory to a degree that compared to plaintiff's or that required the

supervision to which she was subjected.  Thus while she repeatedly asserted her being treated

differently, she has not shown a comparable work performance by others that would warrant the

supervision and standards enforcement to which she was held.  In effect there is no evidence that

others' job performance was comparably unsatisfactory as was plaintiff's as to suggest that the

same deficiencies found unacceptable as far as plaintiff was concerned were tolerated in the work

of others.  As to matters on which she has the burden of proof, absence of evidence to support the

claim warrants finding movant entitled to summary judgment, <u>Nora Beverages, Inc. v. Perrier Group of America, Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998).

Plaintiff has, in addition to complaining of disparate treatment, above noted as not the subject of evidence that her treatment was shown to have resulted from discriminatory animus related to her ace/color, complained of a hostile work environment. Two elements must be proven to permit that principle to be invoked. The first is that plaintiff was subjected to working "in a discriminatorily hostile or abusive environment". <u>Harris</u>, 510 U.S. at 2. Plaintiff has offered nothing more than evidence of a series incidents she describes as disagreeable, unpleasant, harassing and upsetting, but without evidence of a racial/color basis. For that reason also, she has not met her burden of proving an element of her claim of a hostile work environment, there being no basis to find a genuine issue of material fact in that regard.

In addition, a hostile work environment requires a "workplace [ ] permeated with 'discriminatory intimidation, ridicule and insult [ ]' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. <u>Id.</u>, quoting <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 65, 67, 91 L. Ed. 2d 49,106 S. Ct. 2399 (1986) (<u>quoting Los Angelos Dept. of Water and Power v. Manhart</u>, 435 U.S. 702, 707 n.13, 55 L. Ed. 2d 657, 98 S. Ct. 1370 (1978)); <u>Schwapp v. Town of Avon</u>, 118 F.3d 106 (2d Cir. 1997). Plaintiff's recitation of incidents she found unacceptable is a far cry from meeting that standard. Conduct which merely "engenders offensive feelings" does not sufficiently affect the conditions of employment to implicate Title VII. <u>Harris</u>, 510 U.S. at 21 again quoting <u>Meritor</u>, 477 U.S. at 65. The conduct is tested for severity, frequency, whether it is physically threatening

16

or humiliating, or merely offensive.  Psychological harm may be considered with other relevant factors.  Even if plaintiff's articulation of the aspects of her work environment she deemed objectionable is fully credited, neither individually nor cumulatively are they so severe and pervasive to a person of reasonable sensitivity to constitute a hostile work environment as opposed to being merely offensive.  By her own admission and claim, she continued to work with only two temporary interruptions and characterizes her workload as overly burdensome.  Pl.'s Memo. at 37-38.  She also cites as race discriminatory an incident of a black couple seeking a Notary being passed to her, which she parlays, without more, into a practice of all African Americans being serviced only by her.

As plaintiff has not met her burden of offering evidence of actual discrimination nor evidence of treatment that would reasonably support an inference of discriminatory animus in Quin's conduct toward her nor as it led to her termination, nor has she proven a prima facie case of hostile work environment, defendants' motion for summary judgment as to the claim of race/color discrimination is **granted**.

2. AGE

Plaintiff claims she was differently treated, inviting a comparison to her fellow workers. It must be remembered that none of the office employees after 1999 were full time other than Quin and plaintiff.  The three, other than Elke Peck who was a student and worked part time, were not shown to be younger than plaintiff but were older.  Plaintiff has not responded to the motion's challenge to plaintiff's claim of age discrimination.  In the absence of any evidence cited in support of that claim, a genuine issue of material fact cannot be found with respect

17

thereto.  Accordingly the motion is **granted** with respect to plaintiff's claim of age discrimination.

3. DISABILITY

Plaintiff claims she was treated differently because of her disability, relying on the same circumstances and incidents recited as the bases for her other claims of discrimination, in this respect terminating her in the face of her disability.  The ADA prohibits discrimination against persons with disabilities. 42 U.S.C. §§ 12101 et seq.  The first element of the prima facie burden is the existence of a disability. Reeves v. Johnson Controls World Svcs., 140 F.3d 144, 149-50 (2d Cir. 1998).  Plaintiff's evidence on this point, apart from her claims, consists of a note from an internist on August 21, 2000, excusing her from work for two weeks, no cause stated, a notation by a Dr. Miano of disability from September 18, 2000 to October 2, 2000 and a May 30, 2001 psychiatrist's note reflecting depression and her "temporary inability to work due to her psychiatric illness" with an "anticipated return to work date [of] 6/30/01."  Plaintiff's claim of disability is that she "suffers from depression and generalized anxiety." Pl's. Memo. at 31.  This record substantiates three temporary work absences.  It is insufficient to establish a disability under ADA which requires a physical or mental impairment that substantially limits one or more of life's major activities, a record of such an impairment or being regarded by the employer as having such an impairment.  Colwell v. Suffolk County Police Department, 158 F.3d 635, 641 (2d Cir. 1998); 42 U.S.C. § 12102.  There is no evidence of such an impairment nor that plaintiff was regarded as so impaired. Citation of Quin's knowledge of her absence for treatment does not support either.  The cited doctors letters and the plaintiff's work absences, individually nor

18

cumulatively cannot be said to put Quin on notice of a n ADA  disability.  It follows that Quin

cannot be found to have discriminated against plaintiff on the basis of an unknown disability.  To

prove a disability requires evidence of the impairment, its impact on a "major life activity" and a

resulting substantial limit on the activity.  Id. at 641; Toyota Motor Mfg., Ky. Inc. v. Williams,

534 U.S. 184, 195, 122 S. Ct. 681,151 L. Ed. 2d 615 (2002).  While the claimed depression and

anxiety would justify a disability from working for the three short periods, plaintiff has shown no

request for accommodation then nor has she claimed any adverse action with respect to her

employment in relation thereto.  At the end of each of the periods she returned to work.  She

claims that Quin did nothing to relieve her work load but she has made no showing except her

own complaints that she was disabled from being able to perform the work to which she was

assigned, notwithstanding her description of her being grossly overworked.  Pl.'s Memo. at 37-

38.   None of the three doctors she saw has suggested anything other than a temporary absence

from work.  Her claim is stated:

> Plaintiff believes that her illness impacted her major life activities as follows: "I wasn't
> able to help my children with their homework." I wasn't able to maintain a relationship
> between my husband and myself. "I was mentally drained and stressed as a result of the
> treatment that I received, the different treatment I received from the town...I missed time
> [from work] that was excused by my doctor.

Pl.'s Memo. at 32.

The measure of a qualifying disability is not a mere medical diagnosis,  nor claimant's

assertion she is disabled, but evidence of impairment which "prevents or severely restricts the

individual from doing activities that are of central importance to most people's daily lives. The

impairment must also be permanent or long term." Id.  At most plaintiff has shown a medically

justified excuse with respect to short temporary work absences.  The impairment found to qualify as "major" do not embrace anything plaintiff has shown.  See Colwell, 159 F.3d at 642; Bragdon v. Abbott, 524 U.S. 624, 637, 118 S. Ct. 2196, 2204-05, 141 L. Ed. 2d 540, 558 (1998); 45 C.F.R. § § 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2); Ryan v. Grae & Rybicki, 135 F.3d 867, 870 (2d. Cir. 1998).  Plaintiff claims her major life activity impairment is her "enjoyment of life." Ex. A. at 198-99.  No authority is cited for the proposition she advances.  Accordingly it cannot be found that plaintiff has sustained her burden of proving a prima facie case under ADA in the absence of a genuine issue of material fact, i.e. the existence of a disability.  The fact that she struggles with what she sees as an excessive work load is not proof of a substantial limit, i.e that she is unable to work.  Colwell, 158 F.3d at 643.  Depression for which a claimant is treated is not a substantial limit.  Sutton v. United Air Lines, 527 U.S. 471, 482, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999); Swanson v. University of Cincinnati, 268 F.3d 307, 314 (6th Cir. 2001).  Plaintiff functioned and performed her job with only as needed consultation with her doctor, Ex. A, 200, and medication. Id. at 199.

Summary judgment is **granted** with respect to the claim of ADA discrimination.

C. DUE PROCESS

In Count 2, plaintiff claims a deprivation of Fourteenth Amendment Due Process.  In her Memorandum in opposition to defendants' Motion for Summary Judgment she makes no argument as to this claim.  It is deemed abandoned and in the absence of any basis for finding a genuine issue of material fact as to this claim, the motion is granted as to the Due Process claim.

D. EQUAL PROTECTION

20

This claim is also founded on plaintiff's assertion of mistreatment over the course of her employment and leading to her termination. The action is premised on discrimination which is an essential element of a valid claim of denial of equal protection. Silver v. City University of New York, 947 F.2d 1021, 1022 (2d Cir. 1991), citing Arlington Heights v. Metropolitan Housing Development Com., 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977). Plaintiff's assertion of this violation of her constitutional right appears to rely on a claim of disparate treatment of comparable employee(s). She cites Shumway v. United Parcel Service, Inc., 118 F.3d 60 (2d Cir. 1997), which requires sufficient shared employment characteristics. Id. at 64. While identically situated employee(s) is not required, there must be identity in all material respects. The compared employee "must have a situation sufficiently similar to plaintiff's to support a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001). Plaintiff cites Alice Williams as the similarly situated employee. Undisputedly, Ms. Williams was not a full time employee. For the course of plaintiff's employment, Williams was a contract employee, working part time as needed (supra at 2; Local Rule 56 Statement, ¶¶ 10, 36, 37) and not doing many of the tasks assigned to plaintiff. Thus the fact, assuming plaintiff's claims to be true, that Ms. Williams was not subjected to bi-weekly performance evaluations, did not have a rat put in her desk drawer, was not a mail clerk for the entire Town government, and did not have her job advertised while she was sick does not constitute disparate treatment in comparison to a similarly situated employee. Plaintiff's evaluations were occasioned by her deficiencies in job performance, not shown to be the case with Ms. Williams. The rat placement was not

attributable to any one nor was a motive shown.  The assignment of mail was a fill-in for the primary person in the Town Manager's office.  The job advertisement was not shown to have had anything to do with plaintiff.  Williams was not shown to have the same job status, indeed it was different.  The circumstance of the incidents or assignments do not qualify as material distinctions that permit a finding that they were occasioned by intended discrimination, either on the basis of race/color or gender.  Nor has plaintiff offered, nor argued, on any other proof of discrimination in support of her claim of denial of equal protection.  See Pl.'s Memo. at 40.

Accordingly Summary Judgment is granted as to the equal protection claim against Quin.

Plaintiff also assert a constitutional rights violation claim against the Town which would only be valid if any discrimination were the result of a policy of the Town.  Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611(1978). No evidence has been offered to show any particular deficit in the training of Quin and no argument defines the purported deficiency.  A condonation argument cannot be premised on Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) as there is no basis to suggest that Quin's treatment of plaintiff, crediting plaintiff's version, "presented an unusually high risk that constitutional rights would be violated," Id., nor has there been any showing of any practice in comparable situations in other communities by which the treatment complained of by plaintiff can be compared.  The suggestion of indifference to persons in plaintiff's protected class, presumably meaning blacks, on the basis of one incident when a black couple were allegedly deferred for plaintiff to respond to their request for a notarization, is a stretch well beyond reason and is not credited.  Assuming the truth of what plaintiff claims Quin did to palm off the couple

to plaintiff, such a single, isolated instance of such minor significance cannot reasonably be parlayed into a town-wide policy applicable to plaintiff's class, absent which, on the part of town employees, no dereliction in training could be found . See Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998); Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). No evidence of a policy of indifference, intending the occurrence of discrimination, is offered by plaintiff as required. See Gant Ex rel Gant v. Wallingford Bd. of Educ., 196 F.3d 134, 141 (2d Cir. 1999). Plaintiff correctly argues that these matters are normally left to a jury, Brown v. Gray, 227 F.3d 1278 (10th Cir. 2000). Where, faced with a Motion for Summary Judgment there is no evidence to raise a genuine material issue of fact essential to the asserted cause of action, movant is entitled to Summary Judgment which is hereby **granted** with respect to this claim.

### D. QUALIFIED IMMUNITY

Defendant Quin claims that she is entitled to qualified immunity. Though she can be held to know that employment decisions cannot be discriminatorily based, as a constitutional right, the burden remains with plaintiff to offer proof in support of her claims. Not only by reason of the above noted deficiency in plaintiff's support of her claims of discrimination, but even if she is credited for the conclusions she presents, it cannot be said that objectively Quin, measured by the reasonable person standard, did know or should have known that her conduct, as claimed by plaintiff, violated a clearly established constitutional right. There was no direct evidence of discriminatory animus on the part of Quin, nor can it be inferred from her dealings as far as work assignments, exercise of supervision, setting standards of job performance and communication

with plaintiff are concerned.  Her conduct was solely directed to plaintiff, as the only full-time

employee subject to her supervision.  For lack of comparison to treatment of another similar

employee, disparate impact is not applicable.  Even if Quin's assertion that her dealings with

plaintiff were solely intended to obtain reasonably expected job performance is not credited, for

the purpose of determining defendants' motion, there is still no direct evidence nor basis for an

inference of a discriminatory motivation in the conduct of which plaintiff complains.  Zahra v.

Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); Dwares v. City of New York, 985 F.2d 94,

100 (2d Cir. 1993).  If it were not for the disposition of the Motion on the bases discussed above,

it would be found that Quin was entitled to qualified immunity.

        E. CFEPA

        Plaintiff assertion of a CFEPA violation is challenged by defendants as lacking the

requisite filing of a complaint with the Commission on Human Rights and Opportunities

(CHRO) and obtaining a release from it.  Conn. Gen. Stat. §46a-60; Hayes v. Yale-New Haven

Hospital, 82, Conn. App. 58, 60 n.2, 843 A2d 616 (2004); Angelsea Productions,Inc. v.

Commission on Human Rights and Opportunities, 248 Conn. 405, 727 A.2d 128 (1999).

Plaintiff has made no argument in response to the defense. Her claim in this respect is deemed

abandoned.  As abandoned and for lack of proof of discrimination in any respect, as discussed

above, accordingly as to this claim Summary Judgment is **granted**.

IV.     **CONCLUSION:**

        For the forgoing reasons defendant's motion of summary judgment is **granted** as to all of

plaintiff's claims and the case is dismissed.  The Clerk shall close the file.

24

Dated at New Haven, Connecticut this 26th day of July, 2005.

/s/
PETER C. DORSEY
UNITED STATES DISTRICT JUDGE