qualified for the position; (3) she was subject to an adverse employment action; and (4) said adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Woroski, 31 F.3d at 108, citing, Spence v. Maryland Casualty Co., 995 F.2d 1147, 1155 (2nd Cir. 1993). In this case, the plaintiff cannot establish that an adverse employment action occurred under circumstances giving rise to an inference of age discrimination. Kathleen Quin, as well as three of the four other women in the office were older than the plaintiff, and the plaintiff's position was later filled by someone older than her. See Exhibit B, ¶¶60-61. The plaintiff has submitted no other evidence of age discrimination. See Exhibit A, pp. 55-57, 179.

### 3.    The Town Of Windsor Had A Legitimate, Non-Discriminatory Reason For Terminating The Plaintiff's Employment

Assuming arguendo that the plaintiff can establish a prima facie case of age discrimination, her claim must fail because the Town of Windsor had a legitimate, non-discriminatory reason for terminating her employment - continued poor work performance.[5]  See section B2 above.  The Second Circuit has explained that "[a]ny stated reason is sufficient; the employer need not persuade the court that the proffered reason was the actual reason for its decision." Tarshis v. The Riese Org., 211 F.3d 30, 36 (2nd Cir. 2000).

### 4.    The Plaintiff Has Submitted No Evidence Of Pretext

Once the employer sets forth a legitimate reason for its action, the burden returns to the plaintiff to show that the proffered explanation was pretext for discrimination. See Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 469-70 (2nd Cir. 2001); McDonnell

---

[5] The plaintiff was not subject to any other adverse employment action. See Weeks, supra.

<u>Douglas</u>, 411 U.S. at 802. The plaintiff has presented no such evidence. <u>See</u> **Exhibit A**, p. 179; and **Exhibit B**, ¶¶60-61.

**D.**  **The Town Of Windsor Is Entitled To Summary Judgment As To The Claim Of Disability Discrimination Under the Americans With Disabilities Act (Count One)**

**1.**  **Analysis of Disability Discrimination Claim**

The Americans with Disabilities Act of 1990, 42 U.S.C. 12101, *et seq.* ("ADA"), prohibits employment discrimination against qualified individuals with disabilities. <u>See</u> 42 U.S.C. §12112(a). Claims under the ADA are also analyzed under the *McDonnell Douglas* burden-shifting paradigm. <u>See</u> <u>Greenway v. Buffalo Hilton Hotel</u>, 143 F.3d 47, 52 (2nd Cir. 1998), *citing*, <u>EEOC v. Amego, Inc.</u>, 110 F.3d 135, 145, n. 7 (1st Cir. 1997).

To establish a *prima facie* case of discrimination under the ADA, the plaintiff must show that: (1) she has a disability under the ADA; (2) she was qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered an adverse employment action under circumstances giving rise to an inference of discrimination on account of her disability. <u>See</u> <u>Reeves v. Johnson Controls World Svcs.</u>, 140 F.3d 144, 149-50 (2nd Cir. 1998).

**2.**  **The Plaintiff Has Failed To Establish A *Prima Facie* Case Of Disability Discrimination**

The plaintiff cannot set forth a *prima facie* case of discrimination under the ADA absent evidence that she suffers from a "disability." The ADA defines a "disability" as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. <u>See</u> <u>Colwell v. Suffolk County Police Dept.</u>, 158 F.3d 635, 641 (2nd Cir. 1998), *citing*, 42 U.S.C. §12102 (1994). The plaintiff alleges that she is an

individual with a disability.  <u>See</u> **Exhibit A**, p. 198; and **Exhibit H**, No. 18.

In order to establish a disability under the first subsection, the plaintiff must prove: (i) that she suffers from a physical or mental impairment; (ii) that her impairment impacted a "major life activity;" and (iii) that the impairment in fact "substantially limits" the identified major life activity.  <u>See</u> <u>Colwell</u>, 158 F.3d at 641; <u>Muller v. Costello</u>, 187 F.3d 298, 312 (2nd Cir. 1999); <u>Toyota Motor Mfg., KY, Inc. v. Williams</u>, 534 U.S. 184, 195 (2002).  The plaintiff alleges that she suffers from a mental impairment, specifically, depression and generalized anxiety.  <u>See</u> **Exhibit A**, p. 198; and **Exhibit H**, No. 19.  A medical diagnosis of an impairment, however, is insufficient to establish a disability under the ADA.  <u>See</u> <u>Toyota Motor Mfg.</u>, 534 U.S. at 198.  The ADA requires proof that the impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact must also be permanent or long-term."  <u>Id</u>.  The plaintiff in this case has provided no such proof.

### a.    Major life activity

First, the plaintiff has failed to identify a major life activity that is impacted by her impairment.  "The plain meaning of the word 'major' denotes comparative importance and suggest[s] that the touchstone for determining an activity's inclusion under the statutory rule is its significance."  <u>Colwell</u>, 158 F.3d at 642, *quoting*, <u>Bragdon v. Abbott</u>, 118 S.Ct. 2196, 2204 (1998).  Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  <u>Bragdon</u>, 118 S.Ct. at 2205, *quoting*, 45 C.F.R. §84.3(j)(2)(ii) (1997); 28 C.F.R. §41.31(b)(2) (1997).  Sitting, standing, lifting and reaching have also been found to constitute major life activities.  <u>See</u> <u>Colwell</u>, 158 F.3d at 642, *citing*, <u>Ryan</u>

v. Grae & Rybicki, 135 F.3d 867, 870 (2nd Cir. 1998). Activities such as driving, doing mechanical work on cars, yard work, shoveling snow, housework other than basic chores, painting, mall shopping, golfing and skiing are not major life activities. See Colwell, 158 F.3d at 642, 643.

The claimed major life activity at issue in this case is the plaintiff's "enjoyment of life." See **Exhibit A**, p. 198-99. The plaintiff claims that her marriage dissolved as a result of her inability to be a wife and mother. See **Exhibit H**, No. 19. She points to the long hours at the Town Clerk's Office and the alleged hostile work environment created by Kathleen Quin as the source of her problems with her husband. See **Exhibit A**, pp. 204-05. She does not, however, identify an *activity* that was impacted by her mental impairment. "Enjoyment of life" is not a major life activity, but rather a conclusion about the quality of one's life. "Enjoyment of life" is not an activity at all. The plaintiff has submitted no evidence that she was limited in such activities as caring for herself, communicating, working, etc., and she has certainly provided no medical documentation to that effect. As such, she has not established a *prima facie* case of discrimination.

### b.    Substantially limiting

Second, the plaintiff has failed to present evidence that she is "substantially limited" in a major life activity. The term "substantially limits" means: (a) unable to perform a major life activity that the average person in the general population can perform; or (b) significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. See Colwell, 158 F.3d at 643, *citing*, 29 C.F.R.

§1630.2(j)(1). This inquiry is individualized and fact-specific. See Colwell, 158 F.3d at 643, citing, Reeves, 140 F.3d at 152; Ryan, 135 F.3d at 872. In considering whether an individual is substantially limited in a major life activity, the following factors should be considered: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. Colwell, 158 F.3d at 643, citing, 29 C.F.R. §1630(j)(2). Each of these factors weigh against the plaintiff.

In Colwell, one of the plaintiffs, a police officer, testified that he had difficulty standing "at attention" for any period of time or standing in one spot; he could not sit too long; he could lift only light objects; and he had trouble sleeping. See id. at 644. The Court noted that the plaintiff could overcome his difficulty standing by moving around; that difficulty sleeping was extremely wide spread; and that he could lift light objects, just not very heavy objects. See id. at 644. As such, the Court concluded that the plaintiff had failed to show that his affliction was any worse than that suffered by a large portion of the nation's adult population. Id. at 644. In this case, the plaintiff has likewise not shown how her condition is any worse than that of a majority of the population.

Further, in analyzing whether a plaintiff is substantially limited in a major life activity, the court must consider the effect of any corrective measures taken by the plaintiff. "[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures - both positive and negative - must be taken into account when judging whether that person is 'substantially limited' in a major life activity." Sutton v. United Air Lines, 527 U.S. 471, 482 (1999). For instance, in Swanson v. University of Cincinnati, 268 F.3d 307, 314 (6th Cir. 2001), the plaintiff

alleged that he was discriminated against on the basis of his depression, a condition that reportedly affected his concentration, communication, and sleep. After being diagnosed with depression, however, he began taking medication that improved his concentration, communication skills, and quality of sleep. See id. at 311-12, 316. The Sixth Circuit Court of Appeals held that the plaintiff, with medication, failed to show that he was substantially limited in any of the cited activities. Id. at 316-17.

In this case, the plaintiff's own testimony reveals that her condition was neither severe nor long-term. The plaintiff testified that she was treated with medication for her depression and generalized anxiety, and that her condition could be controlled with medication. See **Exhibit A**, pp. 199-200. As such, her condition, when considering the affect of medication, certainly could not be considered severe. Moreover, the plaintiff's condition was not long-term. She testified that she has not taken any medication since early 2002 (she was terminated in December 2001), and that she has been able to "handle" her condition without any medication since that time. See **Exhibit A**, pp. 199-200. She sees her doctor only on an as-needed basis. See **Exhibit A**, p. 200.

Where, as here, the alleged impairment is not severe or long-term, and where there is no evidence that the plaintiff's condition was any worse than that suffered by a majority of the population, there is no disability under the ADA.

### 3. The Town Of Windsor Had A Legitimate, Non-Discriminatory Reason For Terminating The Plaintiff's Employment

Assuming *arguendo* that the plaintiff could set forth a *prima facie* case of discrimination, her claim must nonetheless fail because the Town of Windsor had a

legitimate, non-discriminatory reason for terminating the plaintiff's employment - her continued poor work performance.[6]  See section B2 above.

### 4.    The Plaintiff Has Submitted No Evidence Of Pretext

As with her claims of race, color and age discrimination, the plaintiff has presented no evidence of pretext to defeat summary judgment as to her claim of disability discrimination.  First, although the plaintiff claims that Kathleen Quin discriminated against her on the basis of her disability, there is no evidence that Quin even knew that the plaintiff suffered from depression or generalized anxiety.  The plaintiff never told Quin, nor did she provide Quin any medical documentation identifying the medical condition.  <u>See</u> **Exhibit A**, pp. 38-41, 62-64; and **Exhibit B**, ¶62.  Second, the only documentation provided to anyone at the Town that the plaintiff suffered from depression is dated May 30, 2001, long after the Town had begun to document the plaintiff's performance issues.  <u>See</u> **Exhibit S**.  The plaintiff never requested an accommodation.  <u>See</u> **Exhibit A**, p. 203; and **Exhibit B**, ¶63.

### E.    The Town of Windsor Is Entitled To Summary Judgment As To The Plaintiff's Title VII Hostile Work Environment Claim (Count One).

The plaintiff also alleges that she was subjected to a hostile work environment in violation of Title VII.  In order to prevail on a hostile work environment claim, the plaintiff must prove that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment.  <u>See</u> <u>Schwapp v. Town of Avon</u>, 118 F.3d 106 (2nd Cir. 1997), <i>citing</i>, <u>Van Zan v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 715 (2nd Cir. 1996); <u>see also</u>, <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65-66 (1986).  The workplace must be "so severely permeated

---

[6] The plaintiff was not subject to any other adverse employment action.  <u>See</u> <u>Weeks</u>, <u>supra</u>.

with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the plaintiff's] employment were thereby altered." Alfano, 294 F.3d at 373.  A "'mere utterance of an…epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." Schwapp, supra, quoting, Harris, 510 U.S. at 21.  "For racist comments, slurs, and jokes to constitute a hostile work environment, there must by 'more than a few isolated incidents of racial enmity.'" Schwapp, supra, citing, Snell v. Suffolk County, 782 F.2d 1094, 1101 (2nd Cir. 1986).  As a general rule, the alleged unlawful incidents must be sufficiently continuous, as opposed to episodic, in order to be found pervasive.  See Alfano, 294 F.3d at 374, citing, Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2nd Cir. 1997).

Factors to be considered in determining whether the alleged conduct is sufficiently severe or pervasive to create a hostile work environment include: the frequency of the conduct; the severity; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance.  See Harris, 510 U.S. at 23.

In this case, the plaintiff has failed to set forth evidence of an actionable hostile work environment claim as a matter of law.  She has submitted evidence of only one racial comment by Kathleen Quin throughout her three years of employment, and concedes that Quin never directed any racial slurs towards her.  See Exhibit C, pp. 151-52.  The alleged comment, "anyone of color is a problem," was neither physically threatening, nor directed at the plaintiff.  Further, the comment was not very severe, especially in light of the fact that the plaintiff does not even mention the comment as a basis for her claim in her response to interrogatories.  See Exhibit H, No. 15.

On the contrary, the plaintiff cites to only two incidents in support of her claim: the alleged placement by Kathleen Quin of a dead rat in the plaintiff's file drawer on November 20, 2000; and Quin's continuous communications with the plaintiff via post-it notes and e-mails. See **Exhibit H**, No. 15. This alleged conduct is insufficient to impose liability for several reasons. First, there is no evidence that the alleged conduct was carried out on account of the plaintiff's race. In order to prevail on a hostile work environment claim, the plaintiff must establish that the conduct was carried out on account of her status in a protected group. Second, the plaintiff has presented no evidence that Quin placed the rat in her drawer, and in fact, she believes that a man who works in building maintenance placed the rat there. See **Exhibit C**, pp. 79-80. Quin attests to having no involvement in such activity. See **Exhibit B**, ¶64. Third, Quin regularly communicated with everyone in the Town Clerk's Office via notes. See **Exhibit A**, pp. 140-43; and **Exhibit B**, ¶65. As such, there is no evidence that this conduct was discriminatory. Finally, this conduct is simply not severe or pervasive, and therefore cannot constitute to a hostile work environment.

**F.    The Defendants Are Entitled To Summary Judgment As To The Fourteenth Amendment Due Process Claim (Count Two)**

Due process requires that a person deprived of a constitutionally protected liberty or property right be given an opportunity to be heard at a meaningful time and in a meaningful manner. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Determining whether an individual has been denied due process requires a two-part inquiry. First, did the plaintiff have a property or liberty interest protected by the Constitution? See Narumanchi v. Board of Trustees of Conn. St. Univ., 850 F.2d 70 (2nd Cir. 1988), citing, Board of Regents v. Roth, 408 U.S. 564 (1972). Second, what process was due, and

did the government deny the plaintiff the identified interest without providing that constitutional minimum?  See Narumanchi, 850 F.2d at 72.

In this case, the plaintiff does not allege that she was terminated without due process.  Rather, she alleges that she was denied due process when the defendants advised the Connecticut Department of Labor that the reason for her termination was "willful misconduct."  See **Exhibit H**, No. 4.  The Town never charged the plaintiff with willful misconduct and advised her that the reason for her termination was poor performance.  See **Exhibit H**, No. 4.

This claim must fail for two reasons.  First, assuming *arguendo* that the plaintiff had a property interest in her employment position, she was given all the process that she was due under the Fourteenth Amendment.  On October 15, 2001, she was advised in writing that her performance was unacceptable and that termination was an option should her performance not improve.  See **Exhibit O**.  On December 7, 2001, a pre-termination hearing was held before Peter Sousa and Elvira Napoleone.  See **Exhibit A**, pp. 146-48.  Sousa offered the plaintiff the opportunity to present her "side of the story."  See **Exhibit A**, p. 147.  Three days later, the plaintiff was advised that her employment was being terminated.  See **Exhibit A**, p. 149.  She appealed the termination.  See **Exhibit A**, pp. 150-51; **Exhibit C**, p.7; and **Exhibit Q**.  On December 10, 2001, Leon Churchill held a hearing regarding the plaintiff's appeal, and subsequently upheld the termination.  See **Exhibit A**, pp. 151, 153-54; **Exhibit C**, p. 8; and **Exhibit R**.  The plaintiff knew that she had the additional right to arbitrate her termination, but did not do so.  See **Exhibit A**, p. 164; and **Exhibit C**, p. 11.  The plaintiff did not raise any issues or defenses at either the December 10th meeting or the

December 20th hearing.  See **Exhibit B**, ¶58; and **Exhibit C**, pp. 8-9.  She does not claim that she was not advised of the evidence against her or that she was denied the opportunity to be heard.  Therefore, given that she was provided notice of the charge against her - poor work performance - and an opportunity to be heard prior to, and subsequent to, the termination, her due process claim must fail as a matter of law.  Post-deprivation procedures that provide for a hearing to contest a challenged employment decision satisfy the due process requirement.  See Harhay v. Town of Ellington, 323 F.3d 206, 213 (2nd Cir. 2003); Narumanchi, 850 F.2d at 72.  In this case, the plaintiff was given pre and post-termination hearings and the right to arbitration.

Second, the mere fact that "willful misconduct" appeared on the Department of Labor form did not deprive the plaintiff of a property or liberty interest that is protected by the Constitution.  The Town of Windsor did not contest the plaintiff's claim for unemployment, and the plaintiff did in fact receive unemployment.  See **Exhibit A**, pp. 159, 164.  There is no evidence that the plaintiff was "deprived" of anything, let alone any interest of a constitutional magnitude.  Moreover, there is no evidence that the information on the Department of Labor form regarding the reason for termination was even provided by the Town of Windsor or Kathleen Quin.  See **Exhibit A**, pp. 160, 169-70.  The plaintiff has no evidence that Quin advised the Department of Labor that the Town terminated her for willful misconduct.  See **Exhibit A**, 170.  Quin attests that she had no involvement in providing such information to the DOL.  See **Exhibit B**, ¶59.

G.    **The Defendants Are Entitled To Summary Judgment As To The Fourteenth Amendment Equal Protection Claim (Count Two)**

The plaintiff also alleges that the defendants discriminated against her in violation of her Fourteenth Amendment right to equal protection as guaranteed by 42 U.S.C.

§1983.  Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws.  See 42 U.S.C. §1983; Rendell-Baker v. Kohn, 457 U.S. 830, 835 (1982).  Section 1983 does not create any substantive rights, but rather provides a procedure to redress the deprivation of federal rights that are guaranteed elsewhere.  See Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  In order to succeed on a §1983 claim, the plaintiff must establish that the defendants had the requisite state of mind for the underlying violation.  See Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 405 (1997).

The plaintiff claims that the defendants violated her right to equal protection by: (i) extending her probationary period beyond one year; (ii) instituting performance appraisals; (iii) photocopying her errors and keeping a record thereof; (iv) instituting weekly meetings with Dede Moore; (v) failing to provide monetary recognition for her becoming a Certified Town Clerk; and (vi) asking her to provide documentation substantiating her daughter's medical condition.  See **Exhibit F**, No. H.  This conduct did not deprive the plaintiff of any of her constitutional rights.

### 1.    Kathleen Quin is Entitled To Summary Judgment

#### a.    No Evidence Of Invidious Intent

"Proof of … discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Silver v. City University of New York, 947 F.2d 1021, 1022 (2nd Cir. 1991), *quoting*, Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977).  Kathleen Quin is entitled to summary judgment as to the plaintiff's equal protection claim because there is no evidence that she acted with

discriminatory intent.  See §§B, C, and D above.  The plaintiff has submitted no

evidence that Quin carried out the above-referenced actions *on account of* the plaintiff's

race, color, age or disability.  Therefore, the plaintiff's §1983 claim must fail for the same

reasons as her claims under Title VII, the ADEA and the ADA.

### b.     Qualified Immunity

Further, Kathleen Quin is entitled to qualified immunity.  The federal doctrine of

qualified immunity will protect municipal employees acting in their official capacity

against §1983 suits unless the following two conditions are met: (i) the employee's

actions violate clearly established constitutional or statutory rights; and (ii) a reasonable

official in the same position would have known that the challenged conduct violated that

established right.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lennon v. Miller,

66 F.3d 416, 422 (2nd Cir. 1995); Saucier v. Katz, 533 U.S. 194, 202 (2001).  The

defense is "an immunity from suit rather than a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."

Saucier, 533 U.S. at 200-01, *quoting*, Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In this case, Kathleen Quin is entitled to qualified immunity because (i) she did

not violate the plaintiff's clearly established rights, and (ii) it was objectively reasonable

for Quin to believe that she was not violating a clearly established right of the plaintiff.

First, there is no evidence that Kathleen Quin deprived the plaintiff of her right to

equal protection.  On the contrary, the evidence shows that Quin did not implement the

performance appraisals or meetings because of a discriminatory motive but because

the plaintiff continued to make an unacceptable number of errors.  The same holds true

for extending the plaintiff's probationary period and keeping track of her work

34

performance. As for requesting the plaintiff to submit documentation to substantiate a claimed medical leave or not providing her monetary compensation for becoming certified as a town clerk, the plaintiff has failed to show how she was treated differently than other similarly situated individuals. As such, the plaintiff has failed to show how Quin violated her clearly established constitutional rights.

Moreover, Kathleen Quin's actions were objectively reasonable under the circumstances. It is undisputed that the plaintiff worked in the Town Clerk's Office where accurate record keeping is essential. See **Exhibit B**, ¶34. Throughout the plaintiff's three years of employment, however, she continued to have problems with accuracy. See section B2 above. As such, it was objectionably reasonable for Quin to extend the plaintiff's probation, to keep track of the plaintiff's performance, to institute meetings to discuss performance deficiencies, and to implement performance standards and evaluations. Where the official's conduct is objectively reasonable, the plaintiff cannot defeat a motion for summary judgment by simply alleging an unconstitutional, subjective intent. See Blue v. Koren, 72. F.3d 1075 (2nd Cir. 1995). The plaintiff must "proffer particularized evidence of direct or circumstantial facts, … supporting the claim of improper motive…." Id. Such particularized evidence may include "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." Id. The plaintiff has failed to satisfy this burden.

### 2.    The Town of Windsor Is Entitled To Summary Judgment

The Town of Windsor is entitled to summary judgment for two reasons: (i) there is no evidence of discriminatory intent to establish a constitutional violation; and (ii) the

plaintiff cannot establish the requisite nexus between her alleged deprivation of a constitutional right and the actions of the Town of Windsor.

First, as mentioned above, discriminatory intent or purpose is an essential element of a claim for violation of the Equal Protection Clause. See Silver, 947 F.2d 1021. In this case, there is no evidence of discriminatory intent.

Second, the plaintiff has failed to set forth evidence of any actions by the Town that warrant the imposition of liability. In Monell v. Department of Social Services, 436 U.S. 658 (1978), the United States Supreme Court held that "a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." In other words, a municipality cannot be liable pursuant to a theory of *respondeat superior* for actions committed by its employees. See id. On the contrary, in order to hold a municipality liable, the plaintiff is required to plead and prove the existence of: (i) an official policy, practice or custom (ii) that causes the plaintiff to be subjected (iii) to a denial of a constitutional right. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2nd Cir. 1995); see also, City of St. Louis v. Praprotnik, 485 U.S. 112, 128 (1988). "The mere assertion … that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra, 48 F.3d at 685, *quoting*, Dwares v. City of New York, 985 F.2d 94, 100 (2nd Cir. 1993). In this case, there are no such allegations of fact.

Further, there is no evidence of "deliberate indifference." In order to establish municipal liability under §1983 pursuant to a failure to train or failure to supervise theory, the plaintiff must establish "deliberate indifference" on the part of the municipality. See Young v. County of Fulton, 160 F.3d 899, 903 (2nd Cir. 1998), *citing*,

Canton v. Harris, 489 U.S. 378, 388 (1989); and Vann v. City of New York, 72 F.3d

1040 (2nd Cir. 1995). The plaintiff must also prove that "the identified deficiency ... be

closely related to the ultimate injury." Canton, 489 U.S. at 391.

A finding of "deliberate indifference" requires proof that "the defendant intended

the discrimination to occur." See Gant Ex Rel. Gant v. Wallingford Bd. of Educ., 195

F.3d 134, 141 (2nd Cir. 1999). This can be established by showing that "the defendant's

response to known discrimination 'is clearly unreasonable in light of the known

circumstances.'" Id. The plaintiff "must show that the need for more or better

supervision to protect against constitutional violations was obvious." Vann, 72 F.3d at

1049. "An obvious need may be demonstrated through proof of repeated complaints of

civil rights violations; deliberate indifference may be inferred if the complaints are

followed by no meaningful attempt on the part of the municipality to investigate or to

forestall further incidents." Id. In this case, there is no such evidence.

**H.     The Defendants Are Entitled To Summary Judgment As To The
         Claims Under The Connecticut Fair Employment Practices Act**

In order to bring a civil action for discrimination under the Connecticut Fair

Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60, et seq., the plaintiff

must first file a complaint with the Commission on Human Rights and Opportunities

("CHRO") and obtain a release of jurisdiction from the CHRO. See Hayes v. Yale-New

Haven Hospital, 82 Conn. App. 58, 60, n. 2, 842 A.2d 616 (2004), citing, Angelsea

Productions, Inc. v. Commission on Human Rights & Opportunities, 248 Conn. 392,

405, 727 A.2d 1268 (1999). Section 46a-100 of the General Statutes provides that:

> Any person who has timely filed a complaint with the Commission on
> Human Rights and Opportunities in accordance with section 46a-82 and
> who has obtained a release from the commission in accordance with

sections 46a-83a or 46a-101, may also bring an action in the superior court....

C.G.S. §46a-100 (underline added).  Section 46a-101 adds that: "[n]o action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission...."

In this case, the plaintiff never obtained a release from the CHRO.  See Exhibit T, No. 10.  Therefore, this court lacks subject matter jurisdiction over her state claims.  See Hayes, 82 Conn. App. at 60, n. 2.

I.    **The Town Of Windsor Is Entitled To Summary Judgment As To The Plaintiff's Claims Under Conn. Gen. Stat. §46a-60(a)(1) (Count Three)**

The Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60, et seq., makes it unlawful for an employer to discharge from employment or otherwise discriminate against any individual "because of the individual's race, color, ... age, ... [or] present or past history of mental disability...."  See Conn. Gen. Stat. §46a-60(a)(1). The Connecticut courts generally look to federal employment discrimination law for guidance in enforcing this anti-discrimination statute.  See Craine v. Trinity College, 259 Conn. 625, n. 6, 791 A.2d 518 (2002); Levy v. Commission on Human Rights and Opportunities, 236 Conn. 96, 103, 671 A.2d 349 (1996); State v Commission on Human Rights and Opportunities, 211 Conn. 464, 469-70, 559 A.2d 1120 (1989).  As with claims under the federal statutes, claims of discrimination under the Connecticut Fair Employment Practices Act ("CFEPA") are analyzed under the McDonnell Douglas burden-shifting paradigm.  See Ann Howard's Apricots Restaurant v. CHRO, 237 Conn. 209, 676 A.2d 844 (1996); United Technologies Corp. v. CHRO, 72 Conn. App. 212,

221, 804 A.2d 1033 (2002), *citing*, Erisoty v. Merrow Machine Co., 34 Conn. App. 708, 710-11, 643 A.2d 898, cert. denied, 231 Conn. 908, 648 A.2d 151 (1994).

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. See Ann Howard's Apricots, 237 Conn. at 225. Once established, the defendant may "rebut the presumption of discrimination by articulating (not proving) some legitimate, nondiscriminatory reason" for its action. Id.

In this case, the plaintiff's claims of race, color, age and disability discrimination must all fail for the same reason as her Title VII, ADEA and ADA claims - the defendant has submitted a legitimate, nondiscriminatory reason for its actions, a reason which the plaintiff has failed to present evidence to show is pretextual. See §§B, C & D[7] above. The plaintiff's claim of age discrimination must also fail because the plaintiff has failed to establish even a *prima facie* case of age discrimination - there is no evidence that she was treated differently on account of her age. See §C above.

**J.    The Defendants Are Entitled To Summary Judgment As To The Plaintiff's Aiding & Abetting Claim Under Conn. Gen. Stat. §46a-60(a)(5) (Count Three)**

The plaintiff also alleges that the defendants violated §46a-60(a)(5) of the Connecticut Fair Employment Practices Act. Said statute provides as follows:

It shall be a discriminatory practice in violation of this section ... [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so.

Conn. Gen. Stat. §46a-60(a)(5).

---

[7] The defendant assumes for the purpose of this motion that the plaintiff did have a mental disability as defined under the CFEPA, which defines disability differently than the ADA. See Conn. Gen. Stat. §46a-51(20).

The plaintiff's claim of aiding and abetting in violation of Conn. Gen. Stat. §46a-60(5) must fail for two reasons: (i) Kathleen Quin is the named individual who actually committed the alleged discriminatory acts against the plaintiff; and (ii) the Town of Windsor has set forth a legitimate, nondiscriminatory reason for its actions which the plaintiff has not rebutted.

First, the plaintiff cannot prevail on her claim against Kathleen Quin because Quin is the individual who allegedly committed the discriminatory acts against her.  Quin was the plaintiff's immediate supervisor and the individual who allegedly recommended the additional six month probationary period, kept track of the plaintiff's mistakes, gave the plaintiff additional job responsibilities, treated the plaintiff differently than other employees, failed to provide the plaintiff with training information, gave out the plaintiff's home telephone number, requested documentation from the plaintiff regarding her daughter's illness, and instituted a bi-weekly evaluation program.  <u>See</u> Complaint, Count One.  There is no evidence that Quin aided or abetted anyone else in committing discriminatory acts.  Further, as explained in §A above, the majority of the actions allegedly taken by Quin are barred by the applicable statute of limitations.

Second, the plaintiff cannot prevail on her claim against the Town of Windsor because the Town has set forth a legitimate, nondiscriminatory reason for its actions.  <u>See</u> <u>Rider v. Town of Farmington</u>, No. 3:99cv02351 (D. Conn. 2001) (Thompson, J.) (attached as **Exhibit U**).  The plaintiff has not presented any evidence to show that the Town's reason - specifically, the plaintiff's continued poor work performance - was pretext.  As such, there is no evidence of a discriminatory employment practice.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this court should grant the defendants' motion for summary judgment in its entirety as to both Kathleen Quin and the Town of Windsor.

DEFENDANTS,
TOWN OF WINDSOR
AND KATHLEEN QUIN IN HER
INDIVIDUAL CAPACITY


By_____
Alexandria L. Voccio, ct21792
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114-1190
Phone:  (860) 249-1361
Fax: (860) 249-7665
E-mail:  avoccio@hl-law.com

41

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 1st day of July, 2004.

Cynthia R. Jennings, Esquire
The Barrister Law Group, LLC
211 State Street
Bridgeport, CT 06604

Alexandria L. Voccio